282 N.J. Super. 19 (1995)
659 A.2d 480
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JUAN RAMOS, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted May 10, 1995.
Decided June 2, 1995.
Before Judges KING, MUIR, Jr., and D'ANNUNZIO.
*20 Edward F. Borden, Jr., Camden County Prosecutor, attorney for appellant (Martin T. Wolf, Assistant Prosecutor, of counsel and on the letter-brief).
Susan L. Reisner, Public Defender, attorney for respondent (Ruth Bove, Assistant Deputy Public Defender, of counsel and on the letter-brief).
The opinion of the court was delivered by D'ANNUNZIO, J.A.D.
Pursuant to leave granted, the State appeals from an order suppressing evidence. We reverse.
The facts are uncontroverted. Officer Daniel Vause of the Police Department of the City of Camden was a member of the department's tactical unit in March of 1994. He testified that the tactical unit "patrol[led] the high drug areas and the high gun areas. We handle[d] the high drug calls and the crime in progress calls." Vause's police training included a two week course in drug trafficking and experience in the field. He had effected approximately 100 to 150 arrests for "street drug transaction[s]." On March 28, 1994, Vause and another officer were in a vehicle at about 7:10 p.m. at the corner of South 24th and Carmen Street. It was raining. He described the corner as a high drug trafficking area. Vause was sitting in the front passenger seat of the vehicle when he observed defendant Ramos standing on the corner in the rain. Vause observed an unidentified hispanic male attempt to hand United States currency to Ramos and, simultaneously, he observed Ramos reach toward the other male with a closed fist as if to transfer something. Vause could not determine what, if anything, Ramos held in his fist.
Based on his training and experience, Vause concluded that the ensuing interchange was a drug transaction. Vause exited his vehicle and asked Ramos to approach him. Ramos fled immediately. Vause gave chase and, during the chase, Ramos discarded *21 a package. Vause apprehended Ramos and found the package which contained 25 packets of cocaine.
The motion judge determined that Officer Vause's observations were "insufficient ... to give rise to probable cause" to believe that a crime was being committed and, therefore, insufficient to "stop, seize, search, take, arrest Ramos, and that the chasing of Ramos, therefore, was improper under [State v. Tucker, 136 N.J. 158, 642 A.2d 401 (1994)]."
A police officer may effect an investigative stop on less than probable cause. A reasonable suspicion, grounded in specific and articulable facts, that a suspect is engaged in criminal activity is sufficient. See United States v. Hensley, 469 U.S. 221, 229, 105 S.Ct. 675, 681, 83 L.Ed.2d 604, 612 (1985); United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621, 628-29 (1981); Delaware v. Prouse, 440 U.S. 648, 654-55, 99 S.Ct. 1391, 1395-96, 59 L.Ed.2d 660, 667-68 (1979); Terry v. Ohio, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889, 906 (1968); State v. Thomas, 110 N.J. 673, 542 A.2d 912 (1988).
This involves something less than the probable cause standard needed to support an arrest. A police officer must be able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion. Id. at 21, 88 S.Ct. at 1879, 20 L.Ed.2d at 906. More recently, in United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), the Court reiterated this requirement, stating that an investigatory stop must be justified by some objective manifestation that the suspect was or is involved in criminal activity. Id. at 417, 101 S.Ct. at 695, 66 L.Ed.2d at 628. The essence of this standard is "that the totality of the circumstances  the whole picture  must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." Id. at 417, 101 S.Ct. at 695, 66 L.Ed.2d at 629; accord State v. Davis, 104 N.J. 490, 504 [517 A.2d 859] (1986) (adopting totality-of-circumstances standard announced in Cortez).
[Thomas, supra, 110 N.J. at 678, 542 A.2d 912.]
Vause's observations, considered in light of his training and experience, supported a reasonable suspicion that defendant was engaging in a drug transaction. The corner was known as an area of high drug activity. In that environment, Vause observed two men standing in the rain while one of the men passed currency to *22 the second man who reached out with a closed hand, as if to transfer something. Those factors must be "seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement," United States v. Cortez, supra, 449 U.S. at 418, 101 S.Ct. at 695, 66 L.Ed.2d at 629, because a "trained officer draws inferences and makes deductions ... that might well elude an untrained person." Ibid. See also State v. Davis, supra.
Officer Vause's reasonable suspicion that defendant was engaged in a drug transaction and the concomitant right to effect an investigative stop of defendant distinguishes the present case from State v. Tucker, supra, 136 N.J. at 158, 642 A.2d 401. In Tucker our Supreme Court affirmed this court's opinion suppressing evidence discarded by Tucker during his flight pursued by the police. Tucker had been sitting on a curb when a police vehicle drove up. Tucker fled. The police had no information regarding Tucker and no reason other than his flight, to suspect him of criminal activity. Thus, the Court concluded that police pursuit of Tucker, ending with the police trapping Tucker in a yard between two sets of law enforcement officers, constituted a seizure without an articulable suspicion of criminal activity.
In the present case, as previously indicated, the police had a reasonable basis to suspect that Ramos was engaged in drug distribution. That suspicion justified Vause's "seizure" of Ramos. Indeed, although not necessary to our decision, it may be argued persuasively that Ramos' flight converted articulable suspicion into probable cause. See State v. Boswell, 115 N.J. Super. 253, 279 A.2d 125 (App.Div. 1971); State v. Royal, 115 N.J. Super. 439, 280 A.2d 201 (App.Div.), certif. denied, 59 N.J. 294, 281 A.2d 807 (1971). Cf. State v. Sullivan, 43 N.J. 209, 238-39, 203 A.2d 177 (1964) (departure from a scene plus other circumstances indicative of criminal activity supports an inference of consciousness of guilt), cert. denied, 382 U.S. 990, 86 S.Ct. 564, 15 L.Ed.2d 477 (1966). We conclude, on the uncontroverted facts, see State v. Contursi, 44 N.J. 422, 428, 209 A.2d 829 (1965) (where facts are *23 established, the determination of probable cause involves only the application of law), that Vause's observations, in light of his training and experience, coupled with Ramos' flight, justified Vause's pursuit, and the discarded drugs should not have been suppressed. Cf. State v. Doss, 254 N.J. Super. 122, 603 A.2d 102, (circumstances aroused articulable suspicion of criminal activity justifying investigative stop and pursuit of fleeing suspect) (cited with approval in Tucker, supra, 136 N.J. at 169-70, 642 A.2d 401), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992).
Reversed and remanded for further proceedings.