701 A.2d 958

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. MICHAEL
DRUMMOND, JEFFREY KATO, AND WALTER WEBSTER,
DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued September 29, 1997—Decided October 24, 1997.

Before Judges HAVEY,[1] LANDAU and COLLESTER.

*Michael S. Curwin,* Assistant Prosecutor, argued the cause for appellant (*Andrew N. Yurick,* Gloucester County Prosecutor, attorney; *Steven S. Sand,* Assistant Prosecutor, of counsel and on the brief).

*Scott T. Schweiger* argued the cause for respondent Michael Drummond (*Taylor, Taylor & Olizi,* attorneys; *Mr. Schweiger,* on the brief).

*Lorraine A. DiCintio* argued the cause for respondent Walter Webster (*Ballen, Gertel & DiCintio,* attorneys; *Ms. DiCintio,* of counsel; *Nancy L. Hart–Esposito,* on the brief).

*Fred B. Last,* Assistant Deputy Public Defender, argued the cause for respondent Jeffrey Kato (*Ivelisse Torres,* Public Defender, attorney; *Mr. Last,* of counsel and on the brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Defendants Michael Drummond (Drummond), Jeffrey Kato (Kato) and Walter Webster (Webster) were indicted on charges of possession of a controlled dangerous substance (CDS) under *N.J.S.A.* 2C:35–10a(1) and possession with intent to distribute CDS under *N.J.S.A.* 2C:35–5a(1) and :35–5b(3).

On leave granted, the State of New Jersey appeals from a decision and order suppressing evidence of cocaine seized by the police officers who apprehended them. We reverse and remand.

On June 27, 1996, at about 11:44 p.m., defendants Drummond, Kato and Webster were sitting in a darkened car on the premises of the M & M Car Wash (M & M) on Sicklerville Road, in Monroe Township, Gloucester County. The car was in the exit lane area near a coin-operated air freshener machine. M & M is a "do-it-

---

[1] Judge Havey did not participate in oral argument. However, the parties have consented to his participation in the decision.

yourself" car wash. There is a coin-operated vacuum machine in the area outside of the wash bays.

Patrolman James Stellaccio, a fourteen and one-half year veteran of the Monroe Township police, was patrolling in uniform with his partner, Patrolman Steven Farrell, in a marked police vehicle when they noticed a darkened car on the car wash property. Stellaccio believed that the car wash was closed as its lights were off. He could not tell whether the car was occupied. The judge found that the car wash was sufficiently illuminated for vision by the light from a streetlamp on Sicklerville Road. Deeming the presence of the darkened car in an apparently closed facility sufficiently suspicious to warrant "making an inquiry on property and life," the officers pulled up in front of the car.[2] As they did, two defendants, Drummond and Kato, immediately left the parked car, moving towards its trunk and away from the police car. Concerned, the officers then left their vehicle and approached on foot in a "tactical move" calculated to "circle the area to get behind the individuals that made the move to the rear of the vehicle." As Stellaccio drew closer, he recognized Drummond and asked, "Michael, what are you doing?" At this point, Drummond discarded a Newport cigarette pack onto the ground. Retrieved by Stellaccio, it appeared to contain CDS. Drummond was arrested. The ensuing search of the vehicle revealed a large rock of crack cocaine in the front center console. Kato and Webster were then also arrested.

The judge found there was no "per se" surreptitious or illegal activity at the location and that the officer who drove must have "screech[ed] on his brakes, flip[ped] his car, turn[ed] his car to the left, and block[ed] the driveway." In essence, he determined that

---

[2] In answer to a question posed by the judge, Stellaccio said that he pulled in front of the car to "see what the vehicle was doing there" or to talk to occupants. It was not disputed that the presence of the vehicle prompted the rapid decision to check by pulling into the car wash and in front of what was to prove an occupied car, and that there was not an initial conscious purpose to block exit. Although marked, the police car had not activated its flashers or siren.

the officers' very method of approach constituted a "seizure" of the defendants at that juncture, and that there was insufficient justification to carry out an investigatory stop. Further, he postulated a scenario in which the police "came to the conclusion that something wrong was going on" and "then looked for the facts to sustain [that conclusion]." Then, finding the opinions in *State v. Arthur*, 149 *N.J.* 1, 691 *A.*2d 808 (1997) and *State v. Tucker*, 136 *N.J.* 158, 642 *A.*2d 401 (1994) to be apt, the judge applied the "fruit of the poisonous tree" doctrine and barred all evidence of contraband. Under this analysis, Drummond's discard of the Newport pack was precipitated by an improper investigatory stop, unsupported by a reasonable and articulable suspicion of illegal activity. The judge found that the police were guilty of "putting the conclusionary cart before the horse."

Instead, the court's analysis may have placed a conclusionary cart before the horse. We note that the judge accepted that the police were travelling at more than a slow cruising rate when they abruptly and sharply turned to pull into the car wash.

■ The initial question for resolution is whether a reasonably objective police officer would have been justified in "making an inquiry on property and life" when observing a darkened car with no one outside it, parked shortly before midnight next to a car wash facility which appeared to be closed for the night because its lights were off. Even though there may have been coin operated air fresheners and vacuum stands which could be actuated all night, and even if partially illuminated by street lighting, we do not find that it was objectively unreasonable for the police to deem the situation worthy of a community caretaking inquiry. *See State v. Martinez*, 260 *N.J.Super.* 75, 78, 615 *A.*2d 279 (App.Div.1992); *State v. Goetaski*, 209 *N.J.Super.* 362, 365, 507 *A.*2d 751 (App. Div.), *certif. denied*, 104 *N.J.* 458, 517 *A.*2d 443 (1986). Here, the initial purpose was not to stop, but merely to see what a darkened car was doing at an hour deemed by experienced police officers, to be atypical for the location.

Thereafter, it was defendants' conduct which precipitated the measured escalation of police inquiry that led first to their temporary detention and then to seizure of the contraband in question. We disagree that this case falls within the type of conduct considered and criticized in *State v. Arthur, supra,* and *State v. Tucker, supra.*

An initial police community caretaking inquiry must not be "overbearing or harassing in nature." *State v. Davis,* 104 *N.J.* 490, 503, 517 *A.*2d 859 (1986). If, however, the defendants' car could not have been seen from the road until the rapidly moving police car was almost abreast of the car wash, we do not find it constitutionally offensive that tires squealed as it pulled sharply into the driveway. Critical to our analysis is the fact that the two officers never had the chance to make a less obtrusive inquiry of the occupants than that which transpired. Indeed, when the determination to check out the car was first made from the street as they patrolled, it wasn't even known whether the car was occupied.

Should the police have just sat and done nothing when their purpose only to inquire was frustrated by the two defendants' rapid departure from the car? We think not. It was then objectively reasonable for the officers to believe that the occupants did not wish to be subjected to a lawful inquiry, and given the circumstances, to take limited but reasonable safety precautions. No guns were drawn, no threats were made, no force was used. Notably, when Stellaccio recognized Drummond, he did seek to inquire what he was doing there, but Drummond continued to move away and then threw the cardboard cigarette pack down.

Here, persons who were lawfully subject to limited inquiry based upon an objectively reasonable exercise of the community caretaking function attempted to preclude such inquiry by their own conduct. Where this happens, particularly late at night, in an otherwise unoccupied location, the totality of circumstances must be considered. We believe that the police met the standards

comprehensively summarized in *State v. Davis, supra,* 104 *N.J.* at 501–505, 517 *A.*2d 859.

Accordingly, we reverse and remand for further proceedings.