742 A.2d 599 (1999)
327 N.J. Super. 22
STATE of New Jersey, Plaintiff-Respondent,
v.
Joseph P. COSTA, III, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1999.
Decided December 29, 1999.
*600 William A. Nash, Woodbury, for defendant-appellant (Hoffman, DiMuzio & Hoffman, attorneys; Mr. Nash, on the brief).
Jack R. Martin, Assistant Prosecutor, for plaintiff-respondent (Jeffrey S. Blitz, Atlantic County Prosecutor, attorney; Mr. Martin, of counsel and on the brief).
Before Judges KING, KLEINER and CARCHMAN.
The opinion of the court was delivered by KLEINER, J.A.D.
Defendant Joseph P. Costa, III, was charged in the Hamilton Township Municipal Court with a disorderly person's offense, possession of under fifty grams of marijuana, N.J.S.A. 2C:35-10(a)(4). He filed a motion to suppress the evidence seized, which was denied. Preserving his right to seek a trial de novo and his concomitant *601 right to raise anew his motion to suppress, defendant pled guilty. The municipal court judge granted him a conditional discharge. Appropriate fines were imposed and defendant's driver's license was suspended for six months. Defendant's sentence was stayed pending the disposition of his trial de novo.
Prior to the trial de novo in the Law Division, defendant again sought to suppress the evidence. Defendant's suppression motion was denied, and the trial judge imposed the same sentence originally imposed in the municipal court. Defendant's sentence was again stayed pending the disposition of this appeal.
On appeal, defendant raises one point of error with four sub-parts:
POINT I
THE LOWER COURTS ERRONEOUSLY DENIED APPELLANT'S MOTION TO SUPPRESS EVIDENCE WHEN POLICE HAD UNLAWFULLY SEIZED APPELLANT AND WHEN APPELLANT'S ACT OF RETRIEVING THE EVIDENCE, AT THE BEHEST OF POLICE HAD BEEN A DIRECT PRODUCT OF THE UNLAWFUL SEIZURE.
1. While a Law Enforcement Officer May Conduct a Traffic Stop, Request a Driver's License, Run a Computer Check, and Issue a Citation, Once the Driver Has Produced a Valid Driver's License and Proof of Entitlement to Drive the Stopped Vehicle, the Law Enforcement Officer is Required to Allow the Driver to Proceed Without Further Delay for [sic] Additional Questioning.
2. Because Costa was not Permitted to Leave, Because Costa Could Not Otherwise Terminate the Encounter and Because Costa Did Not Consent to the Officer's Additional Questioning, an Investigatory Stop Arose to the Level of a Custodial Interrogation.
3. The Actions of the Interrogating Police Officer and the Surrounding Circumstances, Fairly Construed, Would Lead A Person to Believe that He Was Not Free to Refuse to Consent to A Search Request.
4. The Lower Courts Erroneously Held That No Search Had Occurred And Failed To Consider The Totality of the Circumstances Which Gave Rise to A Constructive Search.
From our review of the record on appeal, we conclude that the Law Division judge erred in failing to suppress the evidence seized. We are constrained to reverse defendant's conviction.
I.
On October 5, 1997, at 12:32 a.m., defendant and a friend, Matthew Priate, were sitting in defendant's car in the parking lot of a tavern on Route 322 in Hamilton Township. The tavern was open and there were several other vehicles in the parking lot. According to defendant, he and Priate were listening to a song on the radio but were planning to enter the tavern when the song concluded.
At that time, Sergeant Brian Cavanaugh, while on routine patrol, illuminated the parking lot with his patrol vehicle alley light. He observed that defendant's vehicle was occupied. As defendant and Priate exited the vehicle, Cavanaugh pulled his patrol car behind defendant's vehicle. Cavanaugh exited his vehicle and asked defendant and Priate why they were in the parked vehicle. Defendant replied that they had been listening to a song and were waiting until it was completed before entering the tavern. Cavanaugh then asked, "Are you doing anything you're not supposed to be doing out here?" Although defendant re-explained that he and Priate were simply listening to the radio prior to entering the tavern, Cavanaugh requested to see defendant's credentials. The officer testified that defendant fumbled while retrieving his license. Defendant then requested that Priate retrieve his registration *602 and insurance identification card from the glove compartment. Priate complied and handed the credentials to Cavanaugh, who then demanded to see Priate's driver's license. Priate presented his license to the officer, who then ordered both defendant and Priate to empty their pockets and then proceeded to perform a pat-down search.[1] Although the pat-down search revealed nothing, Cavanaugh placed Priate in the patrol vehicle and proceeded to perform computer checks on defendant, Priate, and defendant's vehicle. The computer check revealed that nothing was amiss.
When Cavanaugh completed the computer check, he asked defendant whether there was anything in the vehicle he should not have. Defendant replied "no." Cavanaugh then pulled Priate from the patrol vehicle and asked him the same question. Cavanaugh then asked defendant if he was sure as to his answer. According to defendant, Cavanaugh alluded that if he searched defendant's vehicle and found something, defendant would be in worse trouble, but if defendant only had something minor and cooperated, then the officer would be lenient.
Cavanaugh then asked permission to search defendant's vehicle. Although the officer testified that he advised defendant that he had a right to refuse a search, defendant denied receiving that advice. Defendant indicated that he would permit a search of his vehicle, but also admitted that he possessed marijuana. Defendant then walked to the vehicle and retrieved a clear plastic bag containing 2.39 grams of marijuana and gave it to Cavanaugh. Both defendant and Priate were immediately arrested. Before the men were transported to the police station, Cavanaugh briefly inspected the interior of the vehicle.
II.
On appeal, defendant contends that although the police officer might have had the authority to stop him in the parking lot to make an inquiry as to why both men had been sitting in the parked vehicle, the officer's subsequent investigation elevated the encounter to a detention which was unsupported by an articulable suspicion, thus rendering defendant's consent to search void. We agree with defendant, and reject the State's contentions that Cavanaugh's stop of defendant was in conformity with his community care taking function, and his subsequent acts did not vitiate defendant's consent.
The Supreme Court of the United States first addressed the community care taking function in Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528, 37 L.Ed.2d 706, 714-15 (1973). Community care taking relates directly to a local official's duty to investigate accidents or disabled vehicles on public roadways. Ibid. It was to be "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." Ibid.
New Jersey first recognized the community care taking function in State v. Goetaski, 209 N.J.Super. 362, 507 A.2d 751 (App. Div.1986). In Goetaski, this court recognized that the police have the ability to make benign automobile stops for the purposes of rendering assistance. Id. at 365-66, 507 A.2d 751. Community care taking stops are differentiated from pretextual and unconstitutional abuses of authority by the unique facts that give rise to such stops. Id. at 363, 507 A.2d 751 (stopping a car driving slowly on the shoulder of a rural road at 4:00 a.m. was a proper exercise of community care taking authority); see, e.g., State v. Martinez, 260 N.J.Super. 75, 615 A.2d 279 (App.Div.1992) (stopping a vehicle moving between five or ten miles per hour in a residential area at 2:00 a.m. was a proper exercise of authority); State v. Garbin, 325 N.J.Super. 521, 739 A.2d 1016 (App.Div.1999) (warrantless entry into defendant's garage to investigate smoke emanating therefrom was a proper *603 exercise of the community care taking function).
The conduct of the officer, given the circumstances of this case, clearly overreaches his lawful authority provided by his community care taking function. This is not a case of a benign stop that escalated into a criminal investigation. The officer clearly intended the stop to be an investigation into criminal conduct. Therefore, the officer's action of stopping defendant and Priate fell outside the grant of authority provided by his community care taking function.
In State v. Williams, 317 N.J.Super. 149, 721 A.2d 718 (App.Div.1998), certif. denied, 157 N.J. 647, 725 A.2d 1128 (1999), we summarized the applicable law pertinent to our decision.
We begin our analysis with the well settled principle that a police officer may effect an investigative stop on less than probable cause. State v. Ramos, 282 N.J.Super. 19, 21, 659 A.2d 480 (App. Div.1995). Investigatory detentions have been sustained as constitutional so long as the stop "is supported by a reasonable suspicion that criminal activity is afoot." State v. Branch, 301 N.J.Super. 307, 318, 693 A.2d 1272 (App. Div.1997), rev'd in part on other grounds, 155 N.J. 317, 714 A.2d 918 (1998). The essence of this standard is that the totality of the of the circumstances must be taken into account. Based upon "the whole picture," United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981), the detaining officers must harbor a particularized suspicion grounded in "specific and articulable facts," State v. Ramos, 282 N.J.Super. at 21, 659 A.2d 480, that a suspect was, or is, engaged in criminal activity. See United States v. Hensley, 469 U.S. 221, 229, 105 S.Ct. 675, 681, 83 L.Ed.2d 604, 612 (1985); Delaware v. Prouse, 440 U.S. 648, 654-55, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660, 667-68 (1979); Terry v. Ohio, 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889, 906-07 (1968); State v. Thomas, 110 N.J. 673, 678, 542 A.2d 912 (1988); State v. Davis, 104 N.J. 490, 504, 517 A.2d 859 (1986).
[Williams, supra, 317 N.J.Super. at 155-56, 721 A.2d 718.]
Based upon the totality of the circumstances presented here, defendant and Priate were merely sitting in a tavern parking lot at an hour when the tavern was open for business and other parked cars were present, inferably the automobiles of tavern employees and other patrons. The officer did not articulate any basis upon which he could have concluded that "criminal activity [was] afoot." Branch, supra, 301 N.J.Super. at 318, 693 A.2d 1272. The officer explained his action by contending that defendant's conduct throughout the event was alarming. First, he stated that the manner in which defendant and Priate exited their car set off his "sixth sense." Second, the nervous manner defendant recovered his licence from his pocket also set off his "sixth sense." Third, the fact that defendant asked Priate to retrieve the registration and insurance information from the glove compartment also set off his "sixth sense." We conclude that a non-specific "sixth sense" does not equate with a "reasonable suspicion that criminal activity is afoot." Ibid. (emphasis added). Moreover, asking a passenger to remove the driver's credentials from a glove compartment is not the type of act which would allow a "reasonable suspicion that criminal activity is afoot." Ibid. (emphasis added).
The State relies heavily upon our opinion in State v. Drummond, 305 N.J.Super. 84, 701 A.2d 958 (App.Div.1997), to support its assertion the stop was lawful. In Drummond, two police officers on patrol spotted a car, without internal or external illumination, parked in the dark lot of a closed do-it-yourself car wash. Id. at 86-87, 701 A.2d 958. The officers pulled their car into the lot and as they did the occupants of the parked car left the vehicle and moved quickly toward the trunk. Ibid.
*604 The officers left their vehicle and confronted the men. Ibid. One of the men tossed a pack of cigarettes that was later found to contain CDS. Ibid. This court held that this police action was a lawful exercise of the community care taking function. Id. at 89, 701 A.2d 958.
In contrast, here, defendant and Priate exited a vehicle in a lit parking lot on the premises of an open business establishment. They answered the officer's inquiry, and defendant presented his driver's license, his automobile registration, and his insurance identification card. Additionally, the officer had not observed a traffic violation or even abnormal driving and did not have any report that defendant or Priate might be in need of police assistance.
Even assuming the officer's inquiry was proper, the subsequent questions and search converted the field inquiry into a Terry[2] stop unsupported by any reasonable articulable suspicion. In Terry v. Ohio, the United States Supreme Court mandated that any search of a person for the purposes of investigation or the police officer's safety must be predicated on "articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." 392 U.S. at 21, 88 S.Ct. at 1879-80, 20 L.Ed.2d at 906.
Our Supreme Court established our requirements for a less than probable cause detention and search in State v. Davis, 104 N.J. 490, 517 A.2d 859 (1986). The Court recognized that there are many encounters with police that do not rise to the level of a detention. Id. at 497, 517 A.2d 859. The key in determining whether a stop is a detention is examining whether the police officer's conduct is outside the scope of normal intercourse. Id. at n. 6. Any inquiry that is a greater intrusion must be justified by a "particularized suspicion" a crime is occurring or about to occur. Id. at 504, 517 A.2d 859.
The field inquiry in this case was rapidly converted to a Terry-like detention as soon as the officer left his vehicle. In State in Interest of J.G., we found that questions that presuppose criminal conduct convert an otherwise benign field inquiry into a Terry stop. 320 N.J.Super. 21, 30, 726 A.2d 948 (App.Div.1999). In J.G., the police officer inquired "you do not have anything you shouldn't?" Ibid. In the present case, the officer made almost an identical inquiry. The officer's first questions, "what are you doing" and "[a]re you doing something you're not supposed to be doing out here," clearly presupposed criminal conduct. Therefore, the officer's questions almost immediately converted the benign field inquiry to a Terry stop that required reasonable articulable suspicion to justify.
Foregoing the officer's questions, his conduct clearly manifested a Terry stop. Detention is determined by an evaluation of whether a reasonable person would believe they were not free to leave given the totality of the circumstances. State v. Tucker, 136 N.J. 158, 164, 642 A.2d 401 (1994) (citing State v. Davis, supra, 104 N.J. at 498, 517 A.2d 859). "The crucial inquiry [is] whether the conduct of the police officer was `overbearing or harassing in nature.'" Davis, supra, 104 N.J. at 503, 517 A.2d 859 (citation omitted). In this case, there is no question that defendant and Priate were detained. First, the officer pulled his vehicle directly behind defendant's. Second, he asked probative questions that assumed criminal conduct on the part of defendant. Third, the officer ran defendant and Priate's licences and defendant's car for violation and finding nothing, conducted a pat-down search and retained defendant's credentials. Further, the officer placed Priate in the back of his car while interrogating defendant. There can be no clearer indications of a Terry stop than the "overbearing and harassing nature" of a pat-down search and being placed in a police car.
*605 The detention in this case is not supported by any reasonable articulable suspicion of criminal activity. A Terry stop must be supported by more than just an awkward reaction to police presence. See State v. Lund, 119 N.J. 35, 47, 573 A.2d 1376 (1990). It must be supported by a confluence of furtive gestures and other objective facts.[3]Ibid. This court held in State v. Kuhn that simply getting into a car when a police vehicle passes by is not enough to justify a Terry stop. 213 N.J.Super. 275, 282, 517 A.2d 162 (1986). Similarly, defendant's detention in this case is unsupportable because the only indication of criminal activity was the manner in which defendant and Priate exited the car. Without further indicia of criminal activity, that simple act does not establish reasonable articulable suspicion for a detention and subsequent search.
Although the Law Division concluded that defendant had given a knowing consent to the search of the automobile to which we must give deference, State v. Locurto, 157 N.J. 463, 470-71, 724 A.2d 234 (1999); State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964), defendant's consent, even if valid, is inconsequential, as it was a result of an illegal detention. Where there is a violation of the Fourth Amendment to the United States Constitution that results in the discovery of other evidence, the subsequent evidence is inadmissible. See Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441, 453-54 (1963); State v. Johnson, 120 N.J. 263, 576 A.2d 834 (1990) (finding that consent obtained during an illegal confession is void). Statements made as a result of the unlawful conduct of the government, whether exculpatory or inculpatory, also mandate exclusion. Wong Sun, at 487, 83 S.Ct. at 417-18, 9 L.Ed.2d at 454-55. Further, any evidence recovered as a result of those statements must also be excluded. Id. at 488, 83 S.Ct. at 417-18, 9 L.Ed.2d at 455. Clearly in this case, there was an illegal detention of defendant either from the beginning of the encounter or sometime after. The result of this detention was an admission by defendant that he possessed marijuana and his consent to search his vehicle for it. Since neither of these acts were preceded by some intervening circumstance, other than the officer's intensifying questioning, the statement must be excluded and the consent considered invalid.
In conclusion, the officer, without any lawful justification for his presence or the detention of defendant, could not conduct a consent search or solicit defendant to turn over the marijuana. Therefore, defendant's motion to suppress should have been granted. Defendant's conviction must be reversed.
Reversed.
NOTES
[1] The officer testified that he performs a pat down search as a matter of routine.
[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
[3] It has been noted by this court that: traffic violations; observation of narcotics, weapons, or exchange of packages; reports of nearby crime; presence of victims; and informant's tips all are objective evidence that provide a sufficient articulable basis to stop. Kuhn, supra, 213 N.J.Super. at 280, 517 A.2d 162 (citations omitted).