**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2781-17T4

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

ALAYSIA SAINT FURCY,

     Defendant-Respondent.

_____

          Argued September 6, 2018 – Decided December 7, 2018

          Before Judges Rothstadt and DeAlmeida.

          On appeal from Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 17-015-C.

          Paula C. Jordao, Assistant Prosecutor, argued the cause for appellant (Fredric M. Knapp, Morris County Prosecutor, attorney; Paula C. Jordao, on the brief).

          John C. Grey Jr. argued the cause for respondent.

PER CURIAM

By leave granted, the State appeals from the Law Division's October 17, 2017 order suppressing a police officer's stop of defendant Alaysia Saint Furcy's vehicle, and the February 14, 2018 order denying reconsideration of that decision. We reverse.

## I.

The following facts, which are not disputed, are taken from the record of the municipal court suppression hearing. On July 4, 2016, at approximately 12:30 a.m., Police Officer Scott Tobin was on patrol on Route 10 West in Denville Township. Defendant was operating a vehicle traveling eastbound on the highway. The officer observed defendant's vehicle make a U-turn, drive a short distance westbound, and enter a commercial parking lot. The parking lot, in which no other vehicle was parked, was connected to TJ Sales, a retail business closed at that early morning hour on a holiday.[1] There are no residences in the area of the parking lot.

Officer Tobin testified that he did not observe defendant violate any traffic laws or drive erratically. He was, however, concerned that something was wrong with either the vehicle or its operator because the car pulled into the

---

[1] It is not clear from the record whether TJ Sales was closed for the night, or was out of business. We do not view the ambiguity in the record on this point to be material to our analysis.

parking lot of a closed establishment shortly after midnight, which he equated with pulling to the side of the road. The officer, who testified that it is his "job to make sure that everyone . . . in the town . . . is okay," entered the parking lot, activated his overhead lights, and conducted a motor vehicle stop. He approached the vehicle, asked defendant for her identification, and inquired why she was in the parking lot. The officer's observations ultimately led him to charge defendant with driving while intoxicated (DWI), N.J.S.A. 39:4-50, refusal to submit to a breath test, N.J.S.A. 39:4-50.4a, and reckless driving, N.J.S.A. 39:4-96.[2]

Defendant moved in the municipal court to suppress the motor vehicle stop, arguing that the officer lacked probable cause to stop her vehicle. The municipal court judge held an evidentiary hearing, at which Officer Tobin testified. In a written decision issued on April 27, 2017, the municipal court denied the motion. The judge, finding Officer Tobin's testimony credible, held that his stop of defendant's vehicle was permissible under the community caretaking exception to the Fourth Amendment warrant requirement because the officer was acting on a legitimate concern for defendant's safety and not for the

---

[2] The reckless driving charge arose from the officer's belief that defendant was operating her vehicle under the influence of alcohol and was not related to the U-turn.

purpose of investigating criminal activity.  See State v. Vargas, 213 N.J. 301, 324 (2013).

Defendant thereafter entered a conditional guilty plea to DWI and refusing to submit to a breath test, reserving her right to appeal the municipal court's decision on the suppression motion.  In exchange for the plea, the reckless driving charge was dismissed.  On the DWI charge, the municipal court sentenced defendant to a ninety-day suspension of her driver's license, twelve hours in the Intoxicated Driver's Resource Center (IDRC), fines, and penalties.  On the refusal conviction, the court sentenced defendant to a concurrent seven-month suspension of her driver's license, installation of an interlock device for six months, a concurrent twelve hours in the IDRC, fines, and penalties.  The municipal court suspended defendant's sentence pending resolution of her appeal to the Law Division.

After defendant filed an appeal, the Law Division judge held a hearing de novo based on the record developed in the municipal court.  In a bench opinion issued on October 13, 2017, the trial court accepted Officer Tobin's testimony that he stopped defendant's vehicle because he was concerned that something might be wrong with the car or its driver.  In addition, the court accepted the officer's testimony that "if he had been told something along the lines of I'm

pulling over to use my phone, I'm trying to get oriented, get directions, or . . . some explanation, the person . . . would have been on their way."

The court held:

> My sense of the totality of the circumstances in this case is that the officer's reaction to seeing the vehicle leave the highway and pull into a private, but open to the public, parking area was itself reasonable.
>
>     . . . .
>
> [W]hat I think the officer saw as unusual in the absence of some explanation of why the vehicle was pulling off of the highway into a . . . parking area open to the public, but that happened to be associated with a closed business. So I find obviously the initial interest is not subject to any Fourth Amendment restriction. And that seems reasonable to me.
>
>     . . . .
>
> I would say that the officer certainly was correct in having his attention drawn to a vehicle going to a closed parking lot.
>
> He would be correct in wanting to find out, under the community caretaking doctrine, if there was something wrong with the driver or wrong with the car.

Despite these findings, the trial court concluded that the community caretaking exception to the warrant requirement did not apply:

> I think under these circumstances it is appropriate to find that while the officer could have approached and inquired of the subject – is there something wrong[?],

can I be of assistance[?] – there is no restriction on that. . . . But the action taken was something slightly different. He activated the overhead lights, got behind the vehicle as I understand it. It was no longer free to leave.

. . . .

The action of actually making a seizure, making a motor vehicle stop . . . I think is off the mark in terms of the community caretaking jurisprudence as I am seeing it to be after considering this case. I find that to be a little bit unfair in a sense to the officer. [I] think it would have been Fourth Amendment proper to have approached the driver and made whatever inquiries are desired.

. . . .

Where I think it may be off the mark is with respect to the turning it into a motor vehicle stop.

. . . .

[I]t occurs to me that there could have been a satisfaction of the curiosity without a motor vehicle stop. It would have gone down just slightly differently, but that would have been okay in my view.

On October 17, 2017, the trial court entered an order granting defendant's motion to suppress and vacating her guilty plea.

The State moved for reconsideration, relying on our holding in State v. Adubato, 420 N.J. Super. 167 (App. Div. 2011). In that case, we held that an officer's activation of the overhead lights on a police vehicle when the officer

pulled behind a parked car to inquire into the safety of the driver did not covert a community caretaking inquiry into an investigatory stop for purposes of the Fourth Amendment. Id. at 180-81. To the contrary, we held that use of overhead lights during a community caretaking inquiry would reassure the driver "that the person parking behind was a police officer rather than a stranger with potentially unfriendly intentions." Id. at 181.

On February 7, 2018, the trial court denied the State's motion for reconsideration. The court issued a bench opinion in which it concluded that Officer Tobin's stop of defendant's vehicle was an investigative detention, not an inquiry under the officer's community caretaking function. This conclusion was based on the court's determination that the defendant's vehicle was still moving when the officer effectuated the stop, the grounds on which the court distinguished our holding in Adubato. The court found no basis for an investigatory stop in light of the officer's admission that he did not suspect defendant of having engaged in criminal behavior.

In addition, the court held that even when viewed under the community caretaking doctrine, the officer's actions violated the Fourth Amendment. The court concluded that the totality of the circumstances did not support stopping

A-2781-17T4

defendant's vehicle because there was "no erratic driving, no bad driving, no motor vehicle violations, no perceived threat to any person or property . . . ."

We thereafter granted the State's motion for leave to appeal. The State raises the following argument for our consideration:

> THE STOP OF DEFENDANT'S VEHICLE WAS PROPER UNDER THE COMMUNITY-CARETAKING DOCTRINE.

## II.

Our standard of review is limited following a trial de novo in the Law Division, conducted on the record developed in the municipal court. State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005); see also R. 3:23-8(a)(2). In such an appeal, we "consider only the action of the Law Division and not that of the municipal court." State v. Oliveri, 336 N.J. Super. 244, 251 (App. Div. 2001). The Law Division judge must make independent findings of fact and conclusions of law based on the evidentiary record of the municipal court with deference to the municipal court judge's ability to assess the witnesses' credibility. State v. Johnson, 42 N.J. 146, 157 (1964). We focus our review on "whether there is 'sufficient credible evidence . . . in the record' to support the trial court's findings." State v. Robertson, 228 N.J. 138, 148 (2017) (alteration in original) (quoting Johnson, 42 N.J. at 162). On legal

determinations our review is plenary. See State v. Kuropchak, 221 N.J. 368, 383 (2015).

We are constrained to conclude that the trial court erred in its interpretation of the community caretaking doctrine. Our analysis begins with the foundational principle that a police stop of a moving motor vehicle is a seizure of the vehicle's occupants and therefore falls within the purview of the Fourth Amendment and Article I, Paragraph 7 of the New Jersey Constitution. Whren v. United States, 517 U.S. 806, 809-10 (1996); State v. Baum, 199 N.J. 407, 423 (2009). Ordinarily, "a police officer must have a reasonable and articulable suspicion that the driver of a vehicle, or its occupants, is committing a motor-vehicle violation or a criminal or disorderly persons offense to justify a stop." State v. Scriven, 226 N.J. 20, 33-34 (2016).

The community caretaking doctrine is an exception to the Fourth Amendment's warrant requirement. Vargas, 213 N.J. at 324; State v. Cassidy, 179 N.J. 150, 161 n.4 (2004). The doctrine is based on "a wide range of social services" that police provide to ensure the safety and welfare of the public, State v. Edmonds, 211 N.J. 117, 141 (2012) (quoting State v. Bogan, 200 N.J. 61, 73 (2009)), and applies when the police are engaged in functions totally divorced from the detection, investigation, or acquisition of evidence relating to the

9

violation of a criminal statute. State v. DiLoreto, 180 N.J. 264, 275 (2004). Community caretaking by police officers includes "aiding those in danger of harm, preserving property, and creating and maintaining a feeling of security in the community." Bogan, 200 N.J. at 73 (quotations and alterations omitted).

Under the exception, police need not demonstrate probable cause or an articulable suspicion to believe that evidence of a crime will be found to justify a seizure under the Fourth Amendment. DiLoreto, 180 N.J. at 276. Their conduct, however, must be "objectively reasonable under the totality of the circumstances." Id. at 278. The doctrine is "a narrow exception to the warrant requirement" subject to "meticulous judicial review" of the facts surrounding the challenged police actions. Id. at 282. The State bears the burden to prove that its seizure of a vehicle falls under the exemption. Scriven, 226 N.J. at 38; Vargas, 213 N.J. at 314.

The applicability of the community caretaking doctrine to motor vehicle stops has been examined in a number of contexts. In State v. Goetaski, 209 N.J. Super. 362, 363 (App. Div. 1986), a State trooper observed a vehicle at 4:00 a.m. travelling slowly on the shoulder of a state highway in a rural, fifty-miles-per-hour zone with its left turn signal activated. After observing operation of the vehicle in this fashion for one-tenth of a mile, the trooper effectuated a stop.

Id. at 363. Based on the driver's conduct during the stop, he was arrested for driving while intoxicated. He moved to suppress the evidence arising from the stop because the trooper lacked reasonable and articulable suspicion of illegal activity when he pulled the driver over. Ibid. The trial court denied the suppression motion. Id. at 364.

On appeal, we accepted the driver's argument that "no specific violation, such as swerving erratically or equipment defect, was observed by the officer" prior to the vehicle stop. Ibid. Applying the community caretaking doctrine, however, we noted that an officer observing the defendant's operation of his vehicle

> would have reason to believe that either there's something wrong with the driver, he's having a problem or there is something out of the ordinary. People don't drive on the shoulder of the road, especially with their left turn signals on [in the middle of the night in a rural area] if there's not something wrong.

> [Id. at 365 (alterations in original).]

Noting an emerging line of precedents from other states holding that "police stops of vehicles were justified to warn occupants that an item of property was endangered or a condition of the vehicle created a potential traffic hazard[,]" we held that "the facts were unusual enough for the time and place to

warrant the closer scrutiny of a momentary investigative stop and inquiry" to satisfy constitutional concerns. Id. at 366. We continued,

> [i]n this case, we will not substitute our judicial hindsight for what appears to us as a sound, nonpretextual exercise of curbstone judgment by the officer. But we do not hesitate to add that this stop is about as close to the constitutional line as we can condone.
>
> [Ibid.]

In State v. Martinez, 260 N.J. Super. 75, 77 (App. Div. 1992), the defendant was observed by an officer travelling "'at a snail's pace'" of less than ten miles per hour in a residential twenty-five-miles-per-hour zone at 2:00 a.m. "[A]lthough otherwise presenting no occasion for inquiry[,]" the officer followed the vehicle before effectuating a stop. Ibid. Based on the officer's observations during the stop, the defendant was charged with driving while intoxicated. The defendant challenged his conviction based on the legality of the vehicle stop.

We found the officer's actions to be within constitutional bounds:

> We take notice . . . that operation of a motor vehicle in the middle of the night on a residential street at a snail's pace between five and ten m.p.h. is indeed "abnormal," as the Trooper testified. Such abnormal conduct suggests a number of objectively reasonable concerns: (a) something might be wrong with the car; (b) something might be wrong with its driver; (c) a traffic

safety hazard is presented to drivers approaching from the rear when an abnormally slow moving vehicle is operated at night on a roadway without flashers; (d) there is some risk that the residential neighborhood is being "cased" for targets of opportunity. Possibilities (a), (b) and (c) involve the "community caretaking function" expected of alert police officers.

* * *

We are satisfied . . . that the stop was objectively reasonable and fell far short of the line of unconstitutionality we drew in Goetaski.

[Id. at 78; see also State v. Washington, 296 N.J. Super. 569, 572 (App. Div. 1997) (under community caretaking doctrine police had objectively reasonable basis to stop car operating at slow speed and weaving within its lane of travel at 12:20 a.m., because behavior indicated something wrong with driver, vehicle, or both, creating potential safety hazard).]

Notably, in State v. Drummond, 305 N.J. Super. 84, 86-87 (App. Div. 1997), officers on routine patrol noticed a darkened car in the parking lot of what appeared to be a closed car wash shortly before midnight. The officers turned into the parking lot, positioning their patrol car in front of the vehicle. As they approached, two people exited the parked car, heading toward its trunk. Id. at 87. The officers alighted from the patrol car and confronted the individuals, one of whom, Drummond, discarded a controlled dangerous

substance in the officers' presence. An ensuing search of the vehicle revealed additional narcotics, resulting in drug charges against Drummond. Ibid.

We rejected Drummond's argument that the contraband seized during the stop should be suppressed because the officers stopped the vehicle without probable cause of criminal activity. We explained that

> [t]he initial question for resolution is whether a reasonably objective police officer would have been justified in "making an inquiry on property and life" when observing a darkened car with no one outside it, parked shortly before midnight next to a car wash facility which appeared to be closed for the night because its lights were off. Even though there may have been coin operated air fresheners and vacuum stands which could be actuated all night, and even if partially illuminated by street lighting, we do not find that it was objectively unreasonable for the police to deem the situation worthy of a community caretaking inquiry. Here, the initial purpose was not to stop, but merely to see what a darkened car was doing at an hour deemed by experienced police officers[] to be atypical for the location.
>
> [Id. at 88 (citations omitted).]

Applying these precedents to the facts before us leads to the conclusion that the stop of defendant's vehicle was justified under the community caretaking doctrine. Like the officers in Drummond, Officer Tobin observed defendant's vehicle in the parking lot of a closed commercial establishment near midnight. The trial court accepted the officer's testimony that he was concerned for the

14

safety of the driver and the operating condition of the vehicle. In addition, there is no suggestion in the record that the officer stopped the vehicle as a pretext to investigate criminal activity. Given the late hour, the unusual circumstances of the presence of defendant's vehicle in the parking lot of a closed business on a holiday weekend, and the officer's testimony that an innocent explanation for defendant's presence would have ended the stop, we conclude on de novo review that the stop was a valid exercise of the officer's community caretaking function.

We see no support for the trial court's conclusion that the officer's activation of the overhead lights on his patrol car transformed the community caretaking inquiry into an investigative stop. To the contrary, we rejected that proposition in Adubato. 420 N.J. Super. at 180-81. Nor do we agree with the trial court's observation that the community caretaking doctrine does not apply where there is "no erratic driving, no bad driving, no motor vehicle violations." The legal precedents make clear that a motor vehicle stop under the community caretaking doctrine must be totally divorced from the investigation of criminal activity. DiLoreto, 180 N.J. at 275. When an officer stops a motor vehicle to investigate a violation of the motor vehicle code, the doctrine does not apply. An officer's interaction with a member of the public under the community caretaking function is separate from criminal investigatory encounters, which

trigger varying degrees of Fourth Amendment protections.  See State v. Rosario, 229 N.J. 263 (2017).  Moreover, a vehicle need not be in motion for an officer reasonably to be concerned about the welfare of its driver, or the operating condition of the vehicle.  Drummond, 305 N.J. Super. at 87-88.

Reversed and remanded for further proceedings consistent with our opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2781-17T4