**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0641-21

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

MATTHEW C. DUFFY,

     Defendant-Appellant.

_____

> Submitted September 12, 2022 – Decided October 21, 2022
>
> Before Judges Whipple, Mawla and Marczyk.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Municipal Appeal No. 01-02-21.
>
> Levow DWI Law, PC, attorneys for appellant (Evan M. Levow, of counsel and on the brief; Christopher G. Hewitt, on the brief).
>
> Mark Musella, Bergen County Prosecutor, attorney for respondent (Jaimee M. Chasmer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

In this appeal from a conviction for Operating a Motor Vehicle Under the Influence of Liquor or Drugs (DWI), N.J.S.A. 39:4-50, defendant Matthew Duffy, appeals from the denial of his motion to suppress evidence recovered after an officer approached him in the parking lot of Great Oak Park in Oakland. We reverse.

We glean the following facts from the record. Around 3:50 p.m. in the afternoon of December 20, 2019, Officer Michael Griffin was patrolling the area of Great Oak Park. Griffin turned onto a driveway, which led into a gravel parking lot within the park. There was snow on the ground and a single vehicle in the lot.

According to Griffin, it was unusual that someone would be in the park in late December since the park was mostly used for hiking and dog walking. Griffin radioed to Oakland Police Dispatch that he would be performing a motor vehicle stop on the SUV and gave the vehicle's license plate number and location to the dispatcher.[1] The officer then parked his cruiser behind the SUV.

Griffin, seeing exhaust coming from the vehicle and concluding that it was running, got out to approach the vehicle. As he approached, he saw that the driver and sole occupant was on a call on his cell phone. When Griffin made it

---

[1] According to a dashcam video of the stop and subsequent interaction.

A-0641-21

to the driver's side window, which had been rolled down, the driver motioned to him to wait while he continued talking on his phone. Griffin waited several minutes for the driver to complete his call.

According to Griffin's testimony, while waiting for the call to end, he observed that the driver's eyes were "bloodshot and watery" and there was a "strong odor of alcoholic beverage" coming from the vehicle. He also observed "some" containers of alcoholic beverages in the interior of the vehicle. After engaging in conversation with the driver, Griffin issued defendant a DWI summons.

Defendant moved to suppress the fruits of the putative stop and search. A hearing was held on March 22, 2021, in Oakland Municipal Court. Only Griffin testified, supplemented by the dashcam video recording from his vehicle, which showed him approaching defendant's vehicle and interacting with defendant. Following argument, the municipal court judge issued an oral ruling denying the motion to suppress, finding the interaction to be a valid field inquiry requiring no justification. Following the denial, defendant entered a conditional guilty plea to one count of DWI. N.J.S.A. 39:4-50.

Defendant appealed to the Law Division, which heard the case de novo. On October 7, 2021, the trial court issued a decision also holding that the

interaction in question was in fact a field inquiry, which did not require constitutional justification and denied the appeal.

This appeal followed.

"[A]ppellate review of a municipal appeal to the Law Division is limited to 'the action of the Law Division and not that of the municipal court.'" State v. Palma, 219 N.J. 584, 591–92 (2014) (quoting State v. Joas, 34 N.J. 179, 184 (1961)). While the Law Division reviews municipal court determinations de novo, this court reviews the "'de novo verdict[s] after a municipal court trial . . . '"to determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record," considering the proofs as a whole.'" R. 3:23-8(a)(2); State v. Zingis, ___ N.J. Super. ___, ___ (App. Div. 2022) (slip op. at 12) (quoting State v. Ebert, 377 N.J. Super. 1, 8 (App. Div. 2005) (quoting State v. Johnson, 42 N.J. 146, 162 (1964))) (alterations in original). Only a "very obvious and exceptional showing of error" will allow facts found both by the municipal court and Law Division to be set aside. State v. Locurto, 157 N.J. 463, 474 (1999).

As always, however, "'[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.'" Zingis, ___ N.J. Super. at ___ (slip op. at 13) (quoting

4

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). "[W]here issues on appeal turn on purely legal determinations, our review is plenary." State v. Monaco, 444 N.J. Super. 539, 549 (App. Div. 2016) (citing State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011)).

Defendant raises the following issues on appeal:

> I. BY POSITIONING HIS PATROL CAR DIRECTLY BEHIND DEFENDANT'S VEHICLE AND IMMEDIATELY WALKING TO THE DRIVER'S WINDOW, THE OFFICER CONDUCTED AN INVESTIGATIVE DETENTION WITHOUT ANY REASONABLE SUSPICION TO BELIEVE THAT ANY CRIME OR TRAFFIC OFFENSE WAS BEING COMMITTED.
>
> II. "COMMUNITY CARETAKING," THE JUSTIFICATION OFFERED BY OFFICER GRIFFIN FOR APPROACHING DEFENDANT'S LAWFULLY PARKED VEHICLE, IS NOT SUPPORTED BY THE FACTS KNOWN TO THE OFFICER.

Defendant argues that the interaction at issue was an investigative detention, requiring a showing of reasonable suspicion of criminal activity to justify it. He argues that, because Griffin parked his cruiser behind defendant's vehicle, no reasonable person in his position would have felt free to leave. We agree.

The trial court disagreed, finding that, instead of an investigatory stop, the officer was merely conducting a field inquiry, which requires no constitutional

5

justification.[2]

"In escalating order of intrusiveness upon a citizen's rights, three categories of encounters with police have been identified by the courts: (1) field inquiry; (2) investigative detention; and (3) arrest." State v. Rosario, 229 N.J. 263, 271 (2017). It is the often paper-thin distinction between field inquiry and investigative detention, which is at issue here. "A field inquiry is essentially a voluntary encounter between the police and a member of the public in which the police ask questions and do not compel an individual to answer." Ibid. (citing State v. Maryland, 167 N.J. 471, 483 (2001)). The member of the public is free to depart at will and need not interact with the officer at all if they do not wish to. Ibid. (citing Florida v. Royer, 460 U.S. 491, 497–98 (1983)). "Because a field inquiry is voluntary and does not effect a seizure in constitutional terms, no particular suspicion of criminal activity is necessary on the part of an officer conducting such an inquiry." Id. at 272 (citing State v. Elders, 192 N.J. 224, 246 (2007)).

---

[2] The court also found that defendant had no reasonable expectation of privacy because he had rolled his window down. Here, defendant is challenging the seizure of the vehicle and defendant's person, to which expectation of privacy is irrelevant. See, e.g., Terry v. Ohio, 392 U.S. 1 (1968) (finding that waylaying a person in public—where one had no expectation of privacy—constitutes investigative detention); State v. Davis, 104 N.J. 490, 498 (1986) (finding that blocking an individual's path in public can constitute investigative detention).

An investigative detention, or <u>Terry</u> stop, entails a higher level of intrusion and thus requires a higher level of justification. <u>Terry</u>, 392 U.S. at 1. "Because an investigative detention is a temporary seizure that restricts a person's movement, it must be based on an officer's 'reasonable and particularized suspicion . . . that an individual has just engaged in, or was about to engage in, criminal activity.'" <u>Rosario</u>, 229 N.J. at 272 (quoting <u>State v. Stovall</u>, 170 N.J. 346, 356 (2002)). A <u>Terry</u> stop "occurs during a police encounter when 'an objectively reasonable person' would feel 'that his or her right to move has been restricted.'" <u>Ibid.</u> (quoting <u>State v. Rodriguez</u>, 172 N.J. 117, 126 (2002); <u>United States v. Mendenhall</u>, 446 U.S. 544, 554 (1980) (plurality opinion)).

Thus, the test of whether an encounter is a field inquiry or <u>Terry</u> stop is simply whether a reasonable person in the individual's place would feel free to terminate the encounter and depart. <u>Id.</u> at 273. This is a totality-of-the-circumstances test, performed from the point of view of a reasonable person in defendant's position. <u>Ibid.</u> In conducting this test, our Supreme Court has long advised that, "as a practical matter, citizens almost never feel free to end an encounter initiated by the police." <u>Rodriguez</u>, 172 N.J. at 129 (citing <u>State v. Valentin</u>, 105 N.J. 14, 19 (1987)).

Even so, "[b]rief, non-intrusive encounters with individuals . . . in parked cars implicate none of the privacy or security concerns engendered by discretionary police spot checks of moving vehicles." State v. Harris, 384 N.J. Super. 29, 45 (App. Div. 2006). Thus, an officer's mere approach of a parked vehicle will not automatically qualify as an investigative detention. We have previously said an officer's approaching a parked car constitutes a field inquiry. See, e.g., Adubato, 420 N.J. Super. at 180–81 (finding that an officer who, at 10:00 p.m., turned on his flashers and pulled up behind a vehicle stopped at the side of the road did not effectuate a Terry stop); State v. Stampone, 341 N.J. Super. 247, 252–53 (App. Div. 2001) (finding that an officer who approached the driver of a stopped vehicle and asked why he was in the area performed only a field inquiry); State v. Egan, 325 N.J. Super. 402, 410–11 (Law Div. 1999) (holding that an off-duty officer walking up to a vehicle constituted a field inquiry).

But, we have also said the presence of additional elements beyond a simple approach may escalate the encounter to an investigative detention. In Egan, 325 N.J. Super. at 410–11, for example, when the officer asked defendant for driving credentials, the encounter became a Terry stop. In Stampone, 341 N.J. Super. at 253, we held that telling the defendant to wait while the officer

8

made an inquiry at a nearby house would result in a detention.

One such additional element is when an officer parks his car behind a defendant's vehicle. In Rosario, 229 N.J. at 273, our Supreme Court found that where an officer parked behind defendant's vehicle, partially boxing her into a parking space, turned on his flood light and approached her, he effectuated an investigative detention. The Rosario Court reasoned that:

> A person sitting in a lawfully parked car outside her home who suddenly finds herself blocked in by a patrol car that shines a flood light into the vehicle, only to have the officer exit his marked car and approach the driver's side of the vehicle, would not reasonably feel free to leave. That conclusion is consistent with ordinary notions of how a reasonable person responds to a demonstration of police authority. . . . Rather, such police activity reasonably would, and should, prompt a person to think that she must stay put and submit to whatever interaction with the police officer was about to come.
>
> [Rosario, 229 N.J. at 273 (citing Rodriguez, 172 N.J. at 129) (additional internal citations omitted).]

This type of inquiry requires us to weigh and balance facts that may initially appear inconsequential but which may tip the scale. As in Rosario, 229 N.J. at 274, the officer herein stopped his vehicle behind a parked car, "partially blocking" them into a parking spot, and then approached the driver's side window. The fact that the car was in a parking spot and partially blocked does

distinguish this case from <u>Adubato</u>, 420 N.J. Super. at 174, and <u>Egan</u>, 325 N.J. Super. at 404, in which the vehicles stopped on the road, and escalates the extent to which the defendant's movement was restricted. On the other hand, Griffin did not use an alley light as the officer in <u>Rosario</u> did, making this stop somewhat less intrusive than the <u>Terry</u> stop in <u>Rosario</u>, 229 N.J. at 267. <u>Rosario</u>'s encounter happened around 11:30 p.m., thus necessitating the use of some light, whereas the events of this case happened around 3:50 p.m., so no additional light was necessary.

The trial court here found that there was no investigative detention based in part on its factual finding—which is entitled to deference—that defendant physically could have driven away had he chosen to. However, the relevant question is not whether defendant was able to do so as a question of fact, but whether a reasonable person in his position would have felt free to do so. <u>Rosario</u>, 229 N.J. at 272. The <u>Rosario</u> Court specifically recognized that partially blocking a driver into a spot, and then directly approaching the vehicle contributes to a feeling that one is not free to depart. <u>Id.</u> at 273. For these reasons, and because "as a practical matter, citizens almost never feel free to end an encounter initiated by the police," <u>Rodriguez</u>, 172 N.J. at 129 (citing <u>Valentin</u>, 105 N.J. at 19), we conclude that, as a matter of law, the interaction

was an investigative detention requiring constitutional justification. The only justification advanced by the State is the community-caretaking exception.

In defendant's point II, he argues that, assuming the interaction was an investigatory detention, it was not justified as an exercise of the officer's community-caretaking function. While the municipal and trial prosecutors both argued that the community-caretaking exception applied, neither court so found, each concluding that the interaction was a mere field inquiry, that required no justification. However, because we review a trial court's "ruling rather than reasons for the ruling" and "may rely on grounds other than those upon which the trial court relied," we address the issue. Adubato, 420 N.J. Super. at 176 (first citing State v. Maples, 346 N.J. Super. 408, 417 (App. Div. 2002), and then State v. Deluca, 325 N.J. Super. 376, 389 (App. Div. 1999), aff'd as modified, 168 N.J. 626 (2001)).

An alternative exception that may validate a brief seizure of a person is found in the community-caretaking doctrine, which recognizes police officers sometimes occupy non-law-enforcement, non-criminal-investigatory roles. State v. Edmonds, 211 N.J. 117, 131 (2012) (citation omitted). The community-caretaking exception is a narrow one, and the State bears the burden of proving that it is applicable. State v. Scriven, 226 N.J. 20, 38 (2016) (citing State v.

Vargas, 213 N.J. 301, 314, 324 (2013)).  In their community-caretaking capacity, so long as officers "act in an objectively reasonable manner, [they] may check on the welfare or safety of a citizen who appears in need of help on the roadway[.]"  Ibid. (citing State v. Diloreto, 180 N.J. 264, 276 (2004)).  Thus, "[p]olice officers who have an objectively reasonable basis to believe that a driver may be impaired or suffering a medical emergency may stop the vehicle for the purpose of making a welfare check and rendering aid, if necessary."  Id. at 39.

In order to constitute an "objectively reasonable basis," there must generally be some outward sign of distress.  Ibid.  In State v. Washington, 296 N.J. Super. 569, 571–72 (App. Div. 1997), a vehicle's slow speed and weaving, while driving after midnight, justified the application of the doctrine.  In State v. Martinez, 260 N.J. Super. 75, 76–78 (App. Div. 1992), likewise, a vehicle's extremely slow pace combined with the late hour was found to have justified a community-caretaking check.  In State v. Goetaski, 209 N.J. Super. 362, 363 (App. Div. 1986), a caretaking intercession was justified where officers observed defendant driving slowly on the shoulder of a road at 4:00 a.m. with his turn signal activated; an objectively reasonable basis to suspect impairment or emergency.  The Goetaski court advised however, that the stop in that case

12

was "about as close to the constitutional line as we can condone." Id. at 366. Thus, where no evidence suggests that "the driver of the car was 'impaired' or that the vehicle had a 'problem,'" the doctrine usually cannot excuse an otherwise unjustified constitutional stop or seizure. Scriven, 226 N.J. at 39.

However, the doctrine is not limited to situations where a car is in motion. In State v. Drummond, 305 N.J. Super. 84, 88 (App. Div. 1997), this court found the community-caretaking exception applicable when officers approached a vehicle parked in the lot of a closed carwash around midnight. The court found the officer's actions were not "objectively unreasonable" and applied the community-caretaking exception. Ibid. It is important to note that this is an inversion of the standard as it exists elsewhere in this State's jurisprudence; the State is required to prove that the officers were acting objectively reasonably. Scriven, 226 N.J. at 38–39.

Conversely, in State v Costa, 327 N.J. Super. 22, 29 (App. Div. 1999), an officer approached two individuals who were sitting in a vehicle in the parking lot of a bar, explaining that he found the individuals' behavior "alarming." The court found that this was insufficient to support application of the doctrine, distinguishing Drummond by emphasizing that the defendants in Costa were in a well-lit area of a business that was open. Id. at 30.

13

Here, there were no specific facts alleged—no objectively reasonable basis—to indicate that the occupant of the vehicle was in distress. The officer indicated only that "due to the fact that there was snow on the ground at the time, I thought it was unusual for someone to be hiking through the trail system later in the afternoon . . . in late December." According to Griffin, it was light out, the park was open for business, and the vehicle was permitted to be in the area.

In sum, there was no objectively reasonable basis for the officer to believe that the driver in this case was impaired or in need of help, as required by the Supreme Court in Scriven, 226 N.J. at 39.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION