213 N.J. Super. 275 (1986)
517 A.2d 162
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROY E. KUHN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 24, 1986.
Decided October 21, 1986.
*276 Before Judges FURMAN and DREIER.
William H. Tobolsky argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; William H. Tobolsky, Designated Counsel, on the brief).
Barbara A. Forte, Assistant Prosecutor Camden County argued the cause for respondent (Samuel Asbell, Prosecutor Camden County, attorney; Barbara A. Forte, of counsel and on letter brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant has appealed from his conviction for possession of a controlled dangerous substance (heroin), N.J.S.A. 24:21-20a, on a guilty plea entered after the denial of a suppression motion. He was sentenced to four years probation with credit for jail time previously served. The sentence was conditioned *277 upon drug rehabilitation and monitoring, as well as 200 hours of noncompensatory community service per year during the first three years of his probation. A Violent Crime Compensation Board penalty of $25 was also imposed.
Defendant has acknowledged committing the offense. What is at issue here is whether the search that disclosed the contraband was in violation of the Fourth Amendment, the parallel provisions of the New Jersey Constitution (1947), Art. I, Par. 7, and the cases interpreting them.
On January 17, 1982, in the mid-afternoon, a Camden City police officer, accompanied by another officer, was driving his police van to the police station at the end of his shift. He was experienced in drug matters, having received training in narcotics and having made more than 50 drug-related arrests. As he approached a bar in an area of high illegal drug activity, he saw a car parked in the bar's parking lot. The only unusual thing about the car was that it was parked diagonally across more than one parking space. Defendant was standing outside of the driver's side of the car, another person was standing outside of the passenger's side, and there was a third person in the front passenger seat of the car. The officer also testified that this pattern of three individuals, two outside of a car, and one inside, fits the profile of a drug transaction. As the officer drove the van into the driveway of the parking lot, defendant apparently saw the van, appeared to say something, then got into the car and began to drive the car from the lot. The officer immediately sounded his siren and followed defendant out of the driveway. Defendant stopped within 50 or 100 feet of the driveway. Although the officer only saw the back of defendant's head, it "seemed like he turned around, looked in the mirror or glanced over his shoulder towards the back of the car." The officer went immediately to the driver's side of the car and asked defendant to get out. Defendant did as he was told, and the officer patted down defendant to determine whether defendant possessed a weapon, discovering a hard object which he later determined was a set of ten keys. But as the *278 keys were pulled out of defendant's pocket, two small packages fell to the ground, one containing a white powdered substance which the officer believed to be heroin. Defendant was then placed under arrest.
Although a complete search of the car revealed some narcotics paraphernalia, the suppression motion was limited to the result of the pat-down of defendant's person. If nothing had been revealed, presumably the search would have gone no further. On cross-examination, the officer testified that he saw no items pass between the three people at the car and, in fact, he could not see what the other two were doing since the car was between the officer and these individuals. In response to questions posed by the trial judge, the officer further stated that defendant was a Caucasian and the other two individuals were Hispanic.
Defendant has raised four points with several sub-points on this appeal.
POINT I. PATROLMAN BUMM'S VEHICLE STOP WAS NOT SUPPORTED BY REASONABLE SUSPICION, AS REQUIRED BY TERRY V. OHIO AND ITS PROGENY.
SUBPOINT A: THE PULLOVER OF THE VEHICLE WAS A FOURTH AMENDMENT SEIZURE.
SUBPOINT B: THE FACTS OBSERVED BY PATROLMAN BUMM PRIOR TO THE VEHICLE STOP WERE INSUFFICIENT TO CONSTITUTE `REASONABLE SUSPICION' AS REQUIRED BY THE FOURTH AMENDMENT.
SUBPOINT C: THE FACTS OBSERVED BY PATROLMAN BUMM PRIOR TO THE VEHICLE STOP WERE INSUFFICIENT TO CONSTITUTE PROBABLE CAUSE TO ARREST UNDER FOURTH AMENDMENT STANDARDS.
SUBPOINT D: SINCE NEITHER PROBABLE CAUSE NOR REASONABLE SUSPICION WERE PRESENT TO JUSTIFY THE SEIZURE, ITS FRUITS, THE SEIZED NARCOTICS, MUST BE SUPPRESSED.
POINT II: ACCEPTING, ARGUENDO, THAT THE VEHICLE STOP WAS JUSTIFIED BY REASONABLE SUSPICION, THE SEARCH OF MR. KUHN'S CLOTHING AND PERSON WAS UNLAWFUL UNDER THE FOURTH AMENDMENT.
SUBPOINT A: A FRISK OF A DETAINEE IS NOT AUTOMATICALLY WARRANTED IN EVERY TERRY STOP: ADDITIONAL ARTICULABLE FACTS MUST CREATE A REASONABLE PARTICULARIZED SUSPICION THAT THE PERSON TO BE SEARCHED POSES A REALISTIC AND IMMEDIATE DANGER TO THE POLICEMAN AT THE SCENE.

*279 SUBPOINT B: A FRISK OF MR. KUHN WAS NOT WARRANTED BECAUSE NO FACTS IN THE RECORD SUPPORT A REASONABLE SUSPICION THAT HE POSED ANY DANGER TO PATROLMAN BUMM AND HIS PARTNER.
SUBPOINT C: WHEN A FRISK IS WARRANTED, IT MUST BE LIMITED IN SCOPE TO A WEAPONS SEARCH TO PROTECT THE OFFICER AND MAY NOT BE A SEARCH FOR CONTRABAND.
SUBPOINT D: PATROLMAN BUMM'S SEARCH OF THE CLOTHING AND PERSON OF MR. KUHN EXCEEDED THE SCOPE OF A FRISK.
SUBPOINT E: SINCE THE SEARCH IS NOT JUSTIFIED UNDER THE FOURTH AMENDMENT, ITS FRUITS MUST BE SUPPRESSED.
POINT III. THE SEARCH AND SEIZURE PROTECTION UNDER N.J. CONSTITUTION OF 1948, ARTICLE 1, PARAGRAPH 7 IS AT LEAST AS GREAT AS THE PROTECTIONS OF THE FEDERAL CONSTITUTION. ACCORDINGLY, THE EVIDENCE MUST BE SUPPRESSED UNDER THE INDEPENDENT PROTECTIONS OF THE NEW JERSEY CONSTITUTION.
POINT IV. THE BURDEN OF PROOF (BY A PREPONDERANCE) FALLS ON THE STATE TO PROVE ALL ELEMENTS JUSTIFYING AN EXCEPTION TO THE REQUIREMENT OF A WARRANT.
We need not treat more than defendant's initial point, since it requires reversal.
The parties basically agree as to the law to be applied. The State contends that there was sufficient cause for the vehicle to be stopped, resulting in the pat down search and discovery of the drugs. Defendant contends to the contrary. The State in its brief also "does not dispute that this stop was a seizure," and we, therefore, do not treat this issue. In Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673 (1977), the United States Supreme Court held:
... except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is likewise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.
See also State v. Kirk, 202 N.J. Super. 28 (App.Div. 1985). A stop is illegal unless the State can "point to specific and articulable facts which, taken together with rational inferences of these facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968). Less than reasonable cause for arrest may warrant a *280 stop, request for information and a pat down search. As noted in Adams v. Williams, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616-17 (1972):
In Terry this Court recognized that `a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest.' Id., [392 U.S.] at 22, 88 S.Ct. at 1880. The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry, recognizes that it may be the essence of good police work to adopt an intermediate response. See Id., at 23, 88 S.Ct., at 1881. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time.
See also State v. Alexander, 191 N.J. Super. 573, 576-577 (App.Div. 1983).
To determine whether there was a basis for this search, we must consider what was not shown, for in all of the following circumstances courts have found a sufficiently articulated basis to stop a citizen and inquire further. There was no traffic violation, Pennsylvania v. Mimms, 434 U.S. 106, 110-11, 98 S.Ct. 330, 333, 54 L.Ed.2d 331, 337 (1977). The officer observed no narcotics, State v. Waltz, 61 N.J. 83, 88 (1972), or weapons, State v. Alston, 88 N.J. 211, 232 (1981). He observed no packages, other objects or even money changing hands between the suspects. State v. Alexander, supra, 191 N.J. Super. at 576. There had been no report of a recent crime nearby, State v. Esteves, 93 N.J. 498, 507 (1983). Defendant and his companions fit no description of suspects in a recent crime, State v. Davis, 50 N.J. 16, 25 (1967), and there was nothing in their physical appearance or clothing suggestive of crime, In re State in Interest of A.C., 115 N.J. Super. 77, 81 (App.Div. 1971). There were no potential or likely victims of crimes observed nearby, State In Interest of H.B., 75 N.J. 243, 251-52 (1977). There had been no informant's tip that a crime or a drug transaction was about to occur, Adams v. Williams, supra, 407 U.S. 143, 147-48, 92 S.Ct. 1921, 1923-24, 32 L.Ed.2d 612, 617 *281 (1972). Defendant's vehicle matched no description of a vehicle involved in any crime, Chambers v. Maroney, 399 U.S. 42, 46-47, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). The encounter was not consensual. Florida v. Rodriguez, 469 U.S. 1, 4-7, 105 S.Ct. 308, 310-11, 83 L.Ed.2d 165, 170-71 (1984).
It is true that there were two Hispanics and a Caucasian in what the officer considered to be a "high crime" area. These factors, however, may not be considered. No rational inference may be drawn from the race of one to be detained that he may be engaged in criminal activities. See United States v. Brignoni-Ponce, 422 U.S. 873, 886-88, 95 S.Ct. 2574, 2582-83, 45 L.Ed.2d 607, 619-21 (1975). If defendant as a white person in a predominantly black neighborhood could be stopped and searched, so could any black person seen in a predominantly white neighborhood. This simply is not the law. Also, the mere fact that the bar in question was located in a high crime or high drug area was, without more, an insufficient circumstance to warrant this search. See Brown v. Texas, 443 U.S. 47, 52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357, 362-63 (1979) (defendant's presence in neighborhood frequented by drug users, by itself, is not a ground for concluding that defendant himself was engaged in criminal activity). As noted in In re Tony C., 21 Cal.3d 888, 148 Cal. Rptr. 366, 371, 582 P.2d 957, 962 (1978):
A day-old burglary report does not transform a residential neighborhood into a no-man's land in which any passerby is fair game for a roving police interrogation.
Although the officer testified that drug activity often occurs when there is a group of three people, a buyer, seller and lookout,[1] he testified to no furtive movements or unusual actions *282 on the part of the three, except for their leaving when the police van drove into the parking lot. That action cannot be inculpatory, since it could have been attributed either to coincidence or to the fact that the individuals did not wish to be in the proximity of police, not a commendable, but also not an unlawful attitude. When defendant left, there had been no signal or other indication on the part of the officers that they wished the car to remain. In short, the situation was no different than if a lawyer was conferring with two clients in the parking lot, perhaps about a criminal matter, and decided to drive away when the police approached. It may be that in an area such as the one described by the officer, in some percentage of cases when any group of three is seen, narcotics will be found if the three are searched; but the law does not permit a search of all such individuals merely because there will be a high incidence of contraband being found in their possession. There must be particularized suspicion. United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 694-95, 66 L.Ed.2d 621, 628-29 (1981).
There having been an insufficient basis shown by the evidence for the stopping of defendant's car, the evidence discovered after the investigative detention both from defendant's person and the car must be suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); State v. Ercolano, 79 N.J. 25 (1979).
*283 The order denying defendant's suppression motion is reversed; his conviction must be vacated.
Reversed.
NOTES
[1] A stop and search of defendant solely on the basis of his having general characteristics of a "drug courier profile," without more, would be unconstitutional. United States v. Herbst, 641 F.2d 1161, 1167 (5th Cir.), cert. den. 454 U.S. 851, 102 S.Ct. 292, 70 L.Ed.2d 241 (1981). See also United States v. Smith, 574 F.2d 882, 885-886 (6th Cir.1978), (permissible to stop and investigate further an airline passenger who exhibited an abnormal abdominal bulge in addition to drug courier profile characteristics). And see United States v. Green, 670 F.2d 1148 (D.C. Cir.1981) which illustrates one scenario where the combination of factors (observed by experienced narcotics officers in an area noted for drug trafficking) was sufficient to provide police with probable cause that a drug transaction had taken place. These factors were: (1) a sequence of events where two people exchange money and a small object from paper bag in the presence of a third person, (2) the cupping of their hands by the three people, suggesting an attempt to conceal the object of the transaction; and (3) apparent flight and evasion by one person upon pursuit by police. See also State v. Alexander, supra.