**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2863-15T3

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

ANTOINE L. HENDERSON,

      Defendant-Appellant.

_____

Submitted April 9, 2018 – Decided January 24, 2019

Before Judges Accurso, O'Connor and Vernoia.

On appeal from Superior Court of New Jersey, Law Division, Ocean County, Indictment Nos. 13-09-2328 and 14-11-2861.

Joseph E. Krakora, Public Defender, attorney for appellant (Alyssa A. Aiello, Assistant Deputy Public Defender, of counsel on the brief).

Joseph D. Coronato, Ocean County Prosecutor, attorney for respondent (Samuel J. Marzarella, Chief Appellate Attorney, of counsel; Roberta DiBiase, Supervising Assistant Prosecutor, on the brief).

This opinion of the court was delivered by

O'CONNOR, J.A.D.

Defendant Antoine L. Henderson appeals from a judgment of conviction entered following a jury trial, as well as from his pretrial motion to suppress evidence. In light of the record and applicable legal standards, we affirm.

A jury convicted defendant of second-degree distribution of heroin within 500 feet of a public park or building, N.J.S.A. 2C:35-7.1(a); second-degree possession of heroin within 500 feet of a public park or building, N.J.S.A. 2C:35-7.1(a); third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1); third-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); and third-degree distribution of heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3). After the appropriate mergers, defendant was sentenced to a twelve-year term of imprisonment, with a six-year period of parole ineligibility.

Defendant raises the following issues on appeal:

> POINT I - THE COURT ERRED IN DENYING
> DEFENDANT'S MOTION TO SUPPRESS
> EVIDENCE.
>
> A. THE LEGALITY OF THE INITIAL
> DETENTION.
>
> B. ACCETTURO'S ACT OF RESISTING
> SHEPHERD'S EFFORTS TO HANDCUFF

HIM DID NOT PURGE THE TAINT OF THE ILLEGAL STOP.

POINT II - REVERSAL IS REQUIRED BECAUSE THE TRIAL COURT ERRONEOUSLY DENIED HENDERSON'S MOTION FOR MISTRIAL MADE WHEN SCANDIFFIO TOLD THE JURY THAT HENDERSON IS "A KNOWN DRUG DEALER." IN THE ALTERNATIVE, REVERSAL IS REQUIRED BECAUSE THE COMBINED PREJUDICE RESULTING FROM SCANDIFFIO'S HIGHLY DAMAGING REMARK AND FROM TESTIMONY, IMPERMISSIBLY ELICITED BY THE PROSECUTOR, THAT ACCETTURO HAD PURCHASED DRUGS FROM HENDERSON IN THE PAST AND THAT THE AREA WHERE THE DRUG SALE ALLEGEDLY OCCURRED HAS BEEN THE SITE OF NUMEROUS DRUG-RELATED ARRESTS IN THE PAST, DEPRIVED HENDERSON OF HIS RIGHT TO DUE PROCESS AND A FAIR TRIAL.  (NOT RAISED BELOW).

    A. THE PRIOR CRIMES EVIDENCE INTRODUCED FIRST THROUGH ACCETTURO AND THEN THROUGH SCANDIFFIO VIOLATED N.J.R.E. 404(b).

    B. TESTIMONY THAT THE AREA IN WHICH HENDERSON WAS ARRESTED HAS BEEN THE        SITE  OF NUMEROUS DRUG ARRESTS IN THE PAST WAS IRRELEVANT AND PREJUDICIAL.

    C. THE TRIAL COURT ERRED BY FAILING TO GRANT HENDERSON'S MOTION FOR MISTRIAL MADE AFTER SCANDIFFIO TOLD THE JURY THAT HENDERSON WAS "A KNOWN DRUG DEALER."  IN THE ALTERNATIVE, REVERSAL IS REQUIRED

3

BECAUSE THE COMBINED PREJUDICE
RESULTING FROM SCANDIFFIO'S HIGHLY
DAMAGING REMARK AND THE OTHER
IMPROPERLY ADMITTED 404(b)
EVIDENCE WAS CLEARLY CAPABLE OF
LEADING THE JURY TO AN UNJUST
RESULT.

POINT III - HENDERSON WAS DENIED
EFFECTIVE ASSISTANCE OF COUNSEL
BECAUSE THERE WAS NO REASONABLE
STRATEGIC BASIS FOR DEFENSE COUNSEL'S
FAILURE TO (A) INTRODUCE EVIDENCE THAT
THE TWO KEY WITNESSES FOR THE STATE
HAD AGREED TO TESTIFY AGAINST
HENDERSON IN EXCHANGE FOR NON-
CUSTODIAL DISPOSITIONS OF THE OFFENSES
WITH WHICH THEY WERE CHARGED IN
CONNECTION WITH THIS CASE, AND (B) ASK
FOR A COOPERATING WITNESS CHARGE,
INSTRUCTING THE JURY THAT IT WAS
REQUIRED TO GIVE CAREFUL SCRUTINY TO
THE TESTIMONY OF THOSE WITNESSES BASED
ON THEIR COOPERATION AGREEMENTS.  (NOT
RAISED BELOW).

I

A

We first address the denial of defendant's motion to suppress.  The

relevant testimony elicited during the suppression hearing was as follows.

Detective Shepherd of the Brick Township Police Department testified that

during the late afternoon of April 29, 2013, he and two other detectives were

conducting undercover surveillance.  The three detectives sat in an unmarked

car in a Wawa parking lot and were looking for evidence of narcotics transactions.

At that time, Shepherd had been assigned to the Drug Enforcement Unit of the police department for thirteen years. He stated drug trafficking often occurred in the Wawa parking lot, which is in a part of the township he characterized as a "high drug area." He testified he had been involved in or "had knowledge of" at least one hundred drug-related arrests in this area over thirteen years.

Approximately ten minutes after the detectives arrived in the lot, a BMW pulled in and parked. The two occupants of the BMW did not exit the car. The BMW then drove across the street, entered and exited a Dunkin' Donuts parking lot, pulled into an adjacent gas station, and stopped behind a Lincoln parked at a gasoline pump. There were two occupants in the Lincoln, a driver and a front seat passenger.

The detectives drove to the gas station and parked between the BMW and a convenience store located on the premises. Shepherd observed the driver of the BMW, later identified as Anthony Accetturo, get out of the BMW and enter the back seat of the Lincoln. Before he got into the Lincoln, Accetturo did not purchase any gasoline. Twenty to thirty seconds after entering the Lincoln, Accetturo emerged and returned to the BMW. Although Shepherd

claimed he could see into the Lincoln, he conceded he did not see any objects exchanged among any of the three occupants while Accetturo was in that vehicle.

Shepherd suspected a drug transaction had "possibly" occurred, because neither occupant of the BMW had entered the Wawa after sitting in its parking lot for ten minutes, they drove to and parked behind the Lincoln, and, after entering the Lincoln, Accetturo exited after only twenty to thirty seconds. The three detectives decided Shepherd and one of the other detectives, Lash, would question Accetturo, while the third detective, Joseph Forrester, would question the two occupants of the Lincoln.

Shepherd and Lash approached Accetturo, who was seated in the driver's seat of the BMW. Shepherd identified himself as a police officer and told Accetturo he wanted to ask him about "who he met with and what was going on." There is no evidence of what Shepherd specifically asked Accetturo but, in response to Shepherd's inquires, Accetturo told Shepherd one of the occupants in the Lincoln was an old friend to whom Accetturo owed twenty-five dollars. Accetturo stated he and his friend arranged to meet so Accetturo could pay his debt.

Shepherd advised Accetturo he was going to compare what Accetturo reported to him to what the occupants of the Lincoln were telling Detective

6

Forrester. Accetturo then stated that he did not in fact give his friend any money, merely that he met with his friend. Accetturo explained he stated he met with his friend to pay a debt, because he felt pressured to give the police a reason for meeting with his friend.

Shepherd and Forrester then conferred and compared what each had learned. Among other things, Forrester informed Shepherd the passenger in the front seat of the Lincoln, who was later identified as defendant, had a couple of hundred dollars in his hand, and that a small quantity of marijuana was on top of the center console of the Lincoln. Forrester expressed skepticism defendant and Accetturo were old friends, because Forrester had ascertained defendant was in his forties and Accetturo in his twenties.

The three detectives walked over to the BMW and directed Accetturo to step out of the car. After he did so, Shepherd observed a rectangular object, smaller than a pack of cigarettes, in the waistband of Accetturo's pants. Based upon his experience, Shepherd suspected the object was a brick of heroin. Adding to his suspicion was the fact that, at that time, the street value of a brick of heroin in the township was between $200 and $250, and defendant had $230 in his possession. Shepherd asked Accetturo what was in his pants and he sarcastically replied it was his penis.

A-2863-15T3

Shepherd informed Accetturo he was placing him under arrest because he believed Accetturo was in possession of heroin. As Shepherd started to place him in custody, Accetturo turned, twisted, and pushed his body against Shepherd's. During the struggle, both Shepherd and Accetturo fell to the ground and the other occupant of the BMW, Lauren Scandiffio, jumped on Shepherd's back. Another police officer who had arrived at the scene pulled her off, and Shepherd was able to gain control over and handcuff Accetturo.

When the police searched Accetturo, he continued to wrestle with Shepherd and, as he was escorted to a police car, a brick of heroin fell out of his pant leg. Defendant, Accetturo, and Scandiffio were transported to the police station. At the station, Accetturo and Scandiffio gave statements admitting Accetturo had contacted defendant in order to purchase narcotics from him.

Detective Sergeant Forrester also testified. His testimony was consistent with Shepherd's, but Forrester added that, at that time, he had been overseeing the Drug Enforcement Unit for three years. In his ten years with the police department, he had made approximately fifty drug-related arrests in the area of the Wawa. He also added that when the BMW pulled into the Wawa parking lot, both occupants were on their cell phones and "looking around."

The State called Accetturo, who testified he contacted defendant to purchase Oxycodone from him, and arranged to meet defendant in the Wawa parking lot. After he and Scandiffio drove to the lot, Accetturo got a call to meet defendant in the gas station across the street. Accetturo drove to the gas station, and parked behind and got into the back seat of a car in which defendant was a passenger. Accetturo gave defendant approximately $250 in exchange for a brick of heroin, which Accetturo then put into his pants.

Accetturo testified that at some point after he returned to his car, the police told him to get out of his car. He complied, but when an officer attempted to handcuff him, Accetturo "pushed back at" the officer, although the officer eventually restrained him. The officer then tried to search him, but he continued to push back against the officer. During the search, the brick of heroin fell out of Accetturo's pants.

At the suppression hearing, defendant argued the police wrongfully detained Accetturo as soon as they parked next to his BMW at the gas station. Defendant further asserted the search of Accetturo's person could not be justified on the ground it was incident to his arrest, because his initial detention was unlawful.

The court rejected defendant's contentions and denied the motion to suppress the heroin, finding the first time Accetturo was detained by the police

9

was when he was ordered to step out of the BMW. The court determined that, at that point in time, the police had reasonable and articulable suspicion Accetturo had engaged in criminal activity, which permitted the police to conduct an investigatory stop. The court also found that even if his arrest were unlawful, Accetturo's resistance to arrest served to sufficiently attenuate the seized heroin from any taint of unconstitutionality.

B

On appeal, defendant abandons his contention Accetturo was unlawfully detained when the detectives parked next to the BMW at the gas station. He now contends Accetturo was unlawfully detained when Shepherd first questioned him. Defendant asserts that, until Forrester told Shepherd of what he had learned from questioning the occupants of the Lincoln, Shepherd did not have reasonable and articulable suspicion Accetturo had engaged or was about to engage in criminal activity. Because the investigatory stop was unlawful, defendant reasons the fruits of such police activity must be suppressed. Finally, defendant contends Accetturo's resistance to his arrest failed to purge the taint of his unlawful detention.

An investigatory stop is valid only "if it is based on specific and articulable facts which, taken together with rational inferences from those facts, give rise to a reasonable suspicion of criminal activity." State v.

10

Williams, 192 N.J. 1, 9 (2007) (quoting State v. Pineiro, 181 N.J. 13, 20 (2004)).  A determination of whether a police officer has reasonable suspicion justifying an investigatory stop is fact sensitive.  The totality of the circumstances facing a police officer at the time of the encounter must be considered in evaluating whether an officer had a reasonable suspicion to conduct a brief investigatory stop.  Pineiro, 181 N.J. at 22.

An officer's experience and knowledge are factors courts consider in applying the totality of the circumstances test.  Ibid.  Notably, "[t]he fact that purely innocent connotations can be ascribed to a person's actions does not mean that an officer cannot base a finding of reasonable suspicion on those actions as long as 'a reasonable person would find the actions are consistent with guilt.'"  Pineiro, 181 N.J. at 25 (quoting State v. Citarella, 154 N.J. 272, 279-80 (1998)).  However, a seizure cannot be justified solely on the basis of a police officer's hunch.  See State v. Elders, 192 N.J. 224, 247 (2007) (citing Pineiro, 181 N.J. at 27).

Further, and significantly, merely being present in an area known for high narcotics trafficking activity does not alone support a finding of reasonable suspicion.  State v. Williams, 381 N.J. Super. 572, 583-584 (App. Div. 2005), rev'd on other grounds, 192 N.J. 1 (2007); State in the Interest of D.S., 125 N.J. Super. 278, 286, (App. Div.) (Botter, J.A.D., dissenting), rev'd,

11

63 N.J. 541 (1973). "[S]ome minimal level of objective justification" must exist to detain a citizen. United States v. Sokolow, 490 U.S. 1, 7 (1989) (quoting INS v. Delgado, 466 U.S. 210, 217 (1984)); State v. Arthur, 149 N.J. 1, 8 (1997).

For example, in D.S., defendant and two others were standing on a street corner one evening outside a tavern in an area known for narcotics traffic. 125 N.J. Super. at 280-81. Two police officers decided to investigate, even though they had not seen anything pass among the three and none was known to the officers as users or sellers of narcotics. Ibid. After patting down all three, defendant was found in possession of heroin. Id. at 281. The Court adopted Judge Botter's dissent, in which he concluded neither the investigatory stop nor the pat-down search was authorized, even though that area was known for narcotics traffic, making the heroin inadmissible. In re State in Interest of D.S., 63 N.J. 541, 542 (1973).

Similarly, in State v. Kuhn, 213 N.J. Super. 275 (App. Div. 1986), the only basis articulated by the police officer for the investigatory stop of the defendant's vehicle was the race of three persons in and around the vehicle and that they were in a "high crime" area. Id. at 280-81. The officer did not observe any narcotics or money changing hands. Id. at 280. We held no

12

rational inference of criminal activity could be drawn under the circumstances. Id. at 282.

The State cites only one authority, Arthur, 149 N.J. 1, in support of its premise that the totality of the circumstances provided Shepherd an objectively reasonable, articulable suspicion to question Accetturo. In Arthur, a police officer engaging in undercover surveillance in an area known for narcotics activity saw a woman enter the defendant's parked car and exit five minutes later carrying a paper bag. Id. at 3. The officer was aware that, at the time, paper bags were commonly used to transport drugs. Id. at 5. She did not have the paper bag when she entered the car and, when she emerged, exhibited furtive movements by looking around her and trying to conceal the bag under her arm. Id. at 4.

Suspecting the woman had purchased drugs from the defendant, the officer subjected her to an investigatory stop. Id. at 5. After looking into the paper bag and finding narcotics paraphernalia, the police stopped the defendant, who volunteered he had drugs in his possession. Ibid. The police searched him and found cocaine. Id. at 5-6. The Court determined the police officer had sufficient grounds to subject the woman to the investigatory stop. Id. at 15.

Here, Shepherd did not have reasonable, articulable suspicion when he initially questioned Accetturo. Even if the area were one where drug trafficking was common, there was little evidence Accetturo was engaging or about to engage in criminal activity. At best, there was evidence Accetturo had arranged to and did meet with the person seated in the Lincoln at a gas station, who was in fact purchasing gas, and the two met for twenty to thirty seconds. There was no other evidence Accetturo had engaged in any illegal activity.

Unlike in Arthur, the detectives did not see Accetturo exit defendant's car carrying any object he did not have when he entered the Lincoln. In fact, despite being able to see inside of the Lincoln, Shepherd admitted he did not observe the exchange of any objects among those in the Lincoln. Accetturo did not exhibit any furtive or other conduct indicting he had drugs in his possession when he emerged from the Lincoln.

In addition, there was no evidence of other factors that have been found to support an investigatory stop in other matters, such as the observation of a traffic violation, the report of recent crimes nearby, or an informant's tip a drug transaction was about to occur. See Kuhn, 213 N.J. Super. at 280-81. Also, there was no evidence the detectives knew Accetturo or defendant was a

14

suspected drug dealer or user.  See Pineiro, 181 N.J. at 18, 25; see also

Citarella, 154 N.J. at 275.

Although there later emerged evidence there had been an exchange of cash and heroin when Accetturo was in the Lincoln, the issue is the knowledge the detectives possessed when they initially questioned Accetturo.  Under these circumstances, the detectives in the present matter could not have reasonably believed a crime was underway when Accetturo was initially approached and questioned.  Lacking the requisite reasonable and articulable level of suspicion to conduct an investigatory stop, the detention was unconstitutional.[1]

Defendant next argues the court erred when it found that even if Accetturo's detention were unlawful, his resistance to arrest served to sufficiently attenuate the seized heroin from the taint of an unlawful detention. We disagree.

The trial court's factual finding defendant resisted arrest is supported by sufficient credible evidence, to which we must defer.  See State v. Gamble, 218 N.J. 412, 424 (2014) (citing Elders, 192 N.J. at 243).  Our review of a trial

_____

[1]  Defendant also argues the investigatory stop cannot be justified on the ground it was a field inquiry, see State v. Nishina, 175 N.J. 502, 510 (2003), but the State is not contending that it was and we discern no basis to conclude the initial encounter was a field inquiry.  See State v. Rodriguez, 172 N.J. 117, 125-27 (2002) (identifying the distinctions between a field inquiry and an investigatory stop).

court's application of the law to the facts is plenary, see State v. Rockford, 213 N.J. 424, 440 (2013), but we concur with the trial court's determination that Accetturo's resistance to arrest served to attenuate any taint of the unlawful detention.

In Williams, 192 N.J. at 4, the Court held that if certain factors apply, evidence seized incident to a lawful arrest for resisting or obstruction will not be suppressed even though the initial stop was unlawful. Here, the trial court properly applied and determined that the factors identified in Williams permitted the admission of the heroin. Those factors are: "'(1) the temporal proximity between the illegal conduct and the challenged evidence; (2) 'the presence of intervening circumstances'; and (3) 'particularly, the purpose and flagrancy of the official misconduct.'" Williams, 192 N.J. at 15 (quoting State v. Johnson, 118 N.J. 639, 653 (1990)).

Here, the temporal proximity between the unlawful detention and Accetturo's arrest was brief, but "temporal proximity 'is the least determinative' factor[]." Id. at 16 (quoting State v. Worlock, 117 N.J. 596, 622-23 (1990)).

There was no evidence the police acted in bad faith when they sought to place Accetturo under arrest. Most importantly, there was an intervening criminal act, the most important factor in the attenuation analysis. See

16

Worlock, 117 N.J. at 623. Specifically, Accetturo's resistance to arrest purged the taint from the unconstitutional investigatory stop. See Williams, 192 N.J. at 18. Further, Accetturo's own movements led to the brick of heroin becoming dislodged from his waistband and falling to the ground, allowing the detectives to see the brick in plain view.

Defendant argues Accetturo neither pushed nor was violent toward Shepherd when Shepherd attempted to arrest him, and thus did not engage in a level of resistance sufficient enough to be an intervening act. Defendant's assertion of the facts is patently belied by the record. Accetturo even admitted he pushed against a police officer and continued to do so after he was handcuffed and while the officer attempted to search him. Accordingly, the trial court properly denied defendant's motion to suppress the heroin.

## II

With some limited exceptions, the material evidence at trial was essentially the same as that adduced during the suppression hearing. On appeal, defendant makes various contentions about the admission of certain evidence, which he claims warrants the reversal of his convictions and a remand for a new trial. We separately address his principal contentions; the remaining ones are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

## A

Defendant complains that during Accetturo's direct examination, the State elicited from him that he not only acquired drugs from defendant on the day of the subject incident, but also on other occasions as well. Defendant argues that when Accetturo stated he purchased drugs from defendant on other occasions, the State improperly introduced evidence defendant committed other crimes or bad acts, in violation of N.J.R.E. 404(b). Further, defendant contends the trial court failed to provide an immediate limiting instruction to the jury. Defendant did not object to this testimony or to the court's failure to provide an instruction.

If a party fails to object to the erroneous admission of testimony, the reviewing court will disregard the admission of the testimony if it was harmless error. However, plain error, defined by Rule 2:10-2 as error "clearly capable of producing an unjust result," will not be disregarded by the reviewing court. State v. Branch, 182 N.J. 338, 353 (2005). "The test of whether an error is harmless depends upon some degree of possibility that it led to an unjust verdict. The possibility must be real, one sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Bankston, 63 N.J. 263, 273 (1973). Furthermore, the reviewing court may infer from trial counsel's failure to

object below that counsel recognized the alleged error was of no moment, or that counsel made a tactical decision to let the error go uncorrected at trial. State v. Macon, 57 N.J. 325, 337 (1971).

Here, the admission of the challenged evidence does not warrant a reversal, whether analyzed under the harmless or plain error rule.  At trial, Accetturo testified he contacted defendant in order to purchase Oxycodone from him, although he subsequently decided to buy heroin instead.  Later that day, Accetturo paid defendant $250 for a brick of heroin.  It was implicit from the evidence defendant sold drugs, because Accetturo knew to contact defendant if he wanted to purchase any.

The introduction of N.J.R.E. 404(b) evidence requires the jury be told "precisely the permitted and prohibited purposes of the evidence, with sufficient reference to the factual context of the case to enable the jury to comprehend and appreciate the fine distinction to which it is required to adhere."  State v. Marrero, 148 N.J. 469, 495 (1997) (quoting State v. Cofield, 127 N.J. 328, 341 (1992)).  Such instructions must ordinarily be issued, both when the evidence is admitted and during the closing charge to the jury.[2]  See State v. Barden, 195 N.J. 375, 390 (2008).  The failure to give a limiting

---

[2]  Defendant does not raise the issue before us, but a limiting instruction was not included in the court's final charge to the jury.

A-2863-15T3

instruction is reviewed under the plain error standard when the issue was not raised at trial. State v. Burns, 192 N.J. 312, 341 (2007).

First, we note a defendant's decision to not request a curative or limiting instruction for an alleged N.J.R.E. 404(b) violation suggests he "was making a strategic decision to his advantage." State v. Yough, 208 N.J. 385, 396-97 (2011). Second, in light of the clear, independent proof of defendant's guilt in this matter, the trial court's error was not of such a nature as to have been clearly capable of producing an unjust result. See R. 2:10-2; see also State v. Gillispie, 208 N.J. 59, 93 (2011) (finding no error from the wrongful admission of N.J.R.E. 404(b) evidence due to the "overwhelming proof submitted by the State throughout each trial of [the] defendants' guilt, independent of the other-crimes evidence . . . .").

B

Similar to the argument asserted above, defendant contends he was prejudiced when Lauren Scandiffio testified he was a "known drug dealer." Although the testimony was provided when Scandiffio was being cross-examined by defense counsel, at trial, defendant maintained he did not solicit this specific testimony and argued he was entitled to a mistrial. The court determined a limiting instruction would suffice and delivered the following instruction at the conclusion of Scandiffio's testimony:

20

> Ladies and gentlemen, before we hear from the State's next witness, I want to instruct you that with respect to Lauren Scandiffio's testimony that the defendant was a known drug dealer, I'm instructing you to totally disregard that testimony. It shall play no part in your deliberations. The statement is not relevant and, frankly, has no evidentiary basis in this case. So, please, I'm instructing you to disregard that completely.

On appeal, defendant does not challenge the sufficiency of the limiting instruction or complain the trial court erred by not providing a similar instruction in its final charge to the jury. Rather, defendant asserts no instruction could have cured the harm caused by Scandiffio's testimony, which is why defendant claims the court erred by not granting him a mistrial.

"The decision to grant or deny a mistrial is entrusted to the sound discretion of the trial court, which should grant a mistrial only to prevent an obvious failure of justice." State v. Harvey, 151 N.J. 117, 205 (1997). Accordingly, this court reviews such a decision for an abuse of discretion, upholding the trial court's decision unless manifest injustice would result. State v. Labrutto, 114 N.J. 187, 207 (1989).

Here, we uphold the court's decision denying defendant a mistrial because no manifest injustice will result if we do. There is no reason to believe the jury was unwilling or unable to follow the curative instruction. State v. Manley, 54 N.J. 259, 270 (1969). Even if the instruction were

inadequate, there was other independent evidence suggesting defendant was a drug dealer – Accetturo contacted him to purchase the subject narcotics. Finally, as previously noted, there was overwhelming evidence of defendant's guilt, making Scandiffio's comment essentially superfluous.

C

During Shepherd's testimony, defendant anticipated Shepherd might refer to the area of defendant's arrest as a "high drug area" and voiced his concern to the trial court, arguing such term was prejudicial. The court prohibited the prosecutor from using use this particular term, but permitted her to question the police about why they went to the Wawa and the number of drug arrests they had made in the area.

Defendant asserts he was unfairly prejudiced as a result of testimony Shepherd thereafter provided about the Wawa and the area around it, because it suggested the area was a high crime one. In the challenged testimony, Shepherd stated:

> We look for people who park in the parking lot, they
> don't enter the store, they remain, you know for, could
> be five minutes, could be ten minutes, could be longer.
> And just to see if they meet up with other people,
> because generally, in my experience, in being in those
> areas, specifically that area, generally when you pull
> into the Wawa, people go in and make a purchase . . .
> and sometimes when we observe people in those
> parking lots and they don't go in, we have made prior

22

arrests in that parking lot pertaining to the use, distribution or possession of controlled dangerous substances.

Defendant also claims he was similarly prejudiced when Forrester testified he had made over fifty drug-related arrests in the area. In addition, defendant asserts Shepherd's and Forrester's testimony was irrelevant, because it had no tendency to prove defendant possessed or distributed drugs in this matter. Defendant acknowledges no reported New Jersey case holds the challenged testimony improper.

We need not address the contentions defendant asserts because, in light of the substantial evidence of defendant's guilt, the admission of the subject testimony was harmless and incapable of leading to an unjust verdict. See State v. Bankston, 63 N.J. 263, 273 (1973).

D

During trial, there was evidence of the following undisputed facts: Accetturo pled guilty to possession of heroin and resisting arrest, for which he was sentenced to a term of probation; Scandiffio pled guilty to possession of heroin, aggravated assault, and obstruction, and was admitted into the Pretrial Intervention Program; when Accetturo and Scandiffio pled guilty, both agreed to provide truthful testimony against defendant.

23                                                                 A-2863-15T3

On appeal, defendant asserts he was denied the effective assistance of counsel because his attorney failed to elicit from Accetturo and Scandiffio that their lenient sentences hinged upon they testify truthfully against defendant. Defendant also complains counsel neglected to request a cooperating witness charge, but the record is clear counsel specifically stated he was opposed to such a charge and it was not in fact delivered to the jury. We conclude the claims against counsel for alleged ineffectiveness are premature.

Claims of ineffective assistance of counsel are typically not reviewed on direct appeal. See State v. Hess, 207 N.J. 123, 145 (2011) (quoting State v. Preciose, 129 N.J. 451, 460 (1992)) ("[W]e routinely decline to entertain ineffective-assistance-of-counsel claims on direct appeal because those claims involve allegations and evidence that lie outside the trial record."). Only when the ineffective assistance claim can be determined on the trial record alone is it appropriate to dispose of the issue on direct appeal. State v. Castagna, 187 N.J. 293, 313 (2006). This is not the case here, because the reasons why counsel declined to cross-examine Accetturo and Scandiffio about their respective plea agreements and why he objected to the cooperating witness charge lie outside of the trial record.

To the extent we have not addressed any argument asserted by defendant, it is because we deemed it without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION