**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS.　A-2468-22
　　　　　　　　　A-3427-22

STATE OF NEW JERSEY,

　　　Plaintiff-Respondent,

v.

KENNETH D. JAMES,

　　　Defendant-Appellant.

_____

Argued (A-3427-22) and Submitted (A-2468-22)
December 12, 2023 – Decided January 24, 2024

Before Judges Natali and Puglisi.

On appeal from the interlocutory orders of the Superior Court of New Jersey, Law Division, Somerset County, Indictment Nos. 21-06-0480 and 21-06-0481.

Joseph M. Mazraani argued the cause for appellant (Mazraani & Liguori, LLP, attorneys; Jeffrey S. Farmer, of counsel and on the briefs).

Catlin A. Davis, Assistant Prosecutor, argued the cause for respondent (John P. McDonald, Somerset County Prosecutor, attorney; Catlin A. Davis, of counsel and on the briefs).

PER CURIAM

In these appeals, calendared back-to-back and consolidated for purposes of this opinion, defendant Kenneth D. James appeals from the Law Division's March 16, 2023 and May 31, 2023 interlocutory orders denying his motions to suppress evidence. Defendant raises the following issue for our consideration in both appeals:

> THE COURT BELOW ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED WITHOUT A WARRANT BECAUSE THERE EXISTED NO REASONABLE AND ARTICULABLE SUSPICION OF CRIMINAL WRONGDOING TO JUSTIFY THE STOP.

Having considered defendant's contentions in light of the record and applicable law, we affirm both orders.

Around 7:30 p.m. on February 9, 2021, Detective Nicholas Gambino was conducting roving surveillance in Franklin Township around "Area One," which is known to law enforcement as a high crime area involving narcotics, firearms and gang violence. Gambino was a member of the Organized Crime and Narcotics Task Force/Street Crimes Unit (Task Force) in the Somerset County Prosecutor's Office. The Task Force is a "pro-active street crimes unit which focuses on the [interdiction] of the distribution of narcotics, firearms and weapons possessions, violent crime, robberies, burglaries [and] stolen

2

vehicles[.]" Gambino, who had knowledge of the area and extensive experience in narcotics investigations, was working undercover, wearing plain clothes and driving an unmarked vehicle.

Gambino saw defendant stop his car in the middle of the street in front of a house on Minetta Road, exit the vehicle and briefly meet with an unknown woman. In order to avoid recognition, Gambino circled the "small residential block" and when he returned to the scene, he observed the woman walking back towards the house and defendant driving away. Although he did not witness any contraband or money being exchanged, based on his training and experience, Gambino believed the activity he observed was consistent with a hand-to-hand narcotics transaction. Gambino was also aware the Task Force had previously seized narcotics and weapons from the house in front of which defendant had stopped, although he was not directly involved in that investigation.

Gambino followed defendant and observed him engaging in what Gambino considered to be countersurveillance measures. During the hearing on the motion to suppress, Gambino testified defendant attempted to "clean" himself by "driving his car at fast speeds" and "taking . . . back roads." Gambino explained "cleaning" was a common term officers used to describe an

3

individual's attempt to ensure a vehicle is not being followed by police and to "lose a tail."

Defendant then turned left onto Girard Avenue, quickly pulled over to the right side of the road and turned off the interior and exterior lights but left the engine running. Based on his training and experience as a narcotics detective, Gambino testified defendant was attempting evasive maneuvers by trying to "blend in . . . as just a vehicle on the side of the road." Defendant then turned his lights back on and began driving at a "high rate of speed" up the street, over the posted speed of twenty-five miles per hour.

Defendant then "abruptly" turned into the driveway of his residence and again turned off the car's interior and exterior lights but left the engine running. Defendant exited the car and walked toward the rear of the house. Gambino pulled over to the side of the road in front of the house, exited his vehicle and yelled, "stop, police," which defendant disregarded. Simultaneously, a detective in a marked police vehicle arrived at the house and pulled into the driveway behind defendant's car. When the detective activated his vehicle's overhead police lights, defendant began running to the rear of the house, again disregarding Gambino's order to stop. As Gambino rounded the house, he saw

4

defendant running away from an area near a basement window. At that point, defendant stopped and put his hands in the air.

When defendant was arrested for hindering apprehension, the detectives traced the path of his footprints in the snow and recovered a semiautomatic firearm near the basement window. Gambino subsequently checked defendant's criminal history, which showed he had two prior weapons convictions in addition to convictions in 2015 for distribution of CDS and unlawful possession of a weapon, and was therefore a certain person not to have a weapon. N.J.S.A. 2C:39-7(b).

Later that evening, the State applied for a telephonic search warrant of defendant's vehicle for evidence of CDS and weapons offenses. Based on Gambino's sworn testimony, the warrant judge found the State established probable cause to search defendant's car and issued the warrant. During their search of defendant's car, officers seized approximately ten ounces of suspected marijuana, sixty-nine grams of suspected hashish, nine individually sealed packs of tetrahydrocannabinol (THC) edibles, and suspected packaging materials for CDS distribution. They also seized $295.64 in cash from defendant's person, presumably during the search incident to his arrest.

Indictment No. 21-06-00480 charged defendant with second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1); second-degree possession of a firearm during a controlled dangerous substance offense, N.J.S.A. 2C:39-4.1(a); two counts of third-degree possession with intent to distribute a controlled dangerous substance, N.J.S.A. 2C:35-5(a)(1) and (b)(11); third-degree hindering apprehension or prosecution, N.J.S.A. 2C:29-3(b)(2); third-degree resisting arrest, N.J.S.A. 2C:29-2(a)(2); and fourth-degree possession of a large capacity magazine, N.J.S.A. 2C:39-3(j). Indictment No. 21-06-00481 charged defendant with second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b).

Defendant filed a "notice of motion to suppress evidence seized without a warrant," arguing it was discovered after an unlawful investigatory stop. Although the notice of motion challenged only a warrantless search, defendant's letter brief in support of the motion addressed both the initial investigatory stop and the warrant search of the vehicle.

Judge Peter J. Tober heard testimony on defendant's motion to suppress. During the hearing, Gambino testified to the incident leading up to the arrest but not to the arrest or search warrant application. On March 16, 2023, Judge Tober

issued his written opinion denying defendant's motion to suppress, finding the totality of the circumstances justified the investigatory stop:

> First, the defendant met with an unknown female in the middle of [Minetta Road]. While such a meeting by itself does not imply that the defendant and unknown female were conducting a drug transaction, it began to arise suspicion to later justify an investigatory stop when the subsequent facts are added to the equation.
>
> When Detective Gambino began following the defendant after meeting with a female on [Minetta Road], the defendant began driving evasively. Here, reasonable suspicion grew not only from the observation of a brief roadside meet in front of . . . Minetta Road, but Detective Gambino's direct observation of defendant's manner of driving as he drove away from the area. [Gambino] indicated that the defendant was driving in an excessive speed in an attempt to evade the officer. More importantly, the defendant, at one point, doused his lights and waited to see if he was being followed.
>
> The defendant then proceeded to turn into the driveway of a residence on Girard Avenue, left his vehicle running, and walked to the rear of the residence instead of the front door. Taking the totality of the circumstances regarding this defendant's conduct in accordance with Lund[1] and Gamble,[2] a reasonable individual could come to the inference that the defendant was about to or might be in the process of committing a crime.

---

[1] State v. Lund, 119 N.J. 35 (1990).

[2] State v. Gamble, 218 N.J. 412 (2014).

A-2468-22

Because the motion was styled as a challenge to the warrantless search, the court did not address the subsequent warrant search of the vehicle. The next day, defendant filed a motion to suppress the evidence seized pursuant to the search warrant, relying on the brief he filed with the first motion. While the second motion was pending, we granted defendant's motion for leave to appeal the March 16, 2023 order.

On May 15, 2023, the judge issued an order and opinion denying defendant's second motion to suppress, apparently under the misunderstanding that the search of the vehicle occurred without a warrant. On May 31, 2023, the judge issued a third order and decision clarifying the two prior orders. In it, the court concluded the totality of relevant circumstances showed the officers' attempted investigative stop was supported by reasonable, articulable suspicion, and ample probable cause supported the search warrant for defendant's car. We granted defendant's motion for leave to appeal the May 31, 2023 order.

On appeal, defendant reiterates the same contention as he did below in both matters: the police lacked a reasonable articulable suspicion he engaged in criminal activity, and therefore lacked probable cause for the search warrant. We disagree.

Our standard of review for a decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). We defer to a trial court's factual findings in a suppression hearing "when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). This deference is in recognition of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Appellate courts "will not disturb the trial court's factual findings unless they are so clearly mistaken that the interests of justice demand intervention and correction." State v. Goldsmith, 251 N.J. 384, 398 (2022) (internal quotation marks and citations omitted). However, legal conclusions to be drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022); State v. Hubbard, 222 N.J. 249, 263 (2015).

We first address the investigatory stop of defendant. "[A] police officer may conduct an investigatory stop of a person if that officer has 'particularized suspicion based upon an objective observation that the person stopped has been or is about to engage in criminal wrongdoing.'" State v. Coles, 218 N.J. 322, 343 (2014) (quoting State v. Davis, 104 N.J. 490, 504 (1986)). "The stop must

be reasonable and justified by articulable facts; it may not be based on arbitrary police practices, the officer's subjective good faith, or a mere hunch." Ibid. The standard for an investigatory stop "is less than the probable cause showing necessary to justify an arrest." State v. Shaw, 213 N.J. 398, 410 (2012).

Here, an experienced detective was conducting roving patrol in an area he knew to be high-crime, and observed defendant stop in the middle of the street to have a brief transaction with a woman. This encounter had the indicia of a hand-to-hand narcotics transaction and occurred in front of a house the detective knew had been the location of prior criminal activity. Upon following defendant's car, the detective observed tactics that, based on his training and experience, appeared to be evasive maneuvers. We find no error in the court's finding that these facts, when taken in their totality, justified Gambino's investigatory stop.

In support of his contention the investigatory stop was not supported by reasonable articulable suspicion, defendant points to State v. Kuhn, 213 N.J. Super. 275 (App. Div. 1986). In that case, an officer in a high-crime area observed a car parked diagonally across more than one parking space, with two people in the car and one individual outside the car. Id. at 277. The officer

testified this arrangement was consistent with a drug transaction and stopped the vehicle when it left the lot. <u>Ibid.</u> We found the stop unsupported:

> Although the officer testified that drug activity often occurs when there is a group of three people, a buyer, seller and lookout, he testified to no furtive movements or unusual actions on the part of the three, except for their leaving when the police van drove into the parking lot. That action cannot be inculpatory, since it could have been attributed either to coincidence or to the fact that the individuals did not wish to be in the proximity of police, not a commendable, but also not an unlawful attitude.
>
> [<u>Id.</u> at 281-82.]

The judge's conclusions here do not collapse under <u>Kuhn</u> because in addition to defendant's unusual behavior in stopping his vehicle in the middle of the street to briefly meet with another individual, the detective testified to defendant's furtive actions in driving his vehicle away from the area. While an individual may "not wish to be in the proximity of police," defendant here did not just leave Minetta Road and drive home. He did so at a high rate of speed in a residential area, then abruptly pulled over and doused the lights on his vehicle. Although defendant argues there may be many reasons for his actions, the determinative inquiry is not whether there are other plausible explanations for defendant's behavior but rather whether the actions, when viewed in their totality, constitute reasonable articulable suspicion of criminal activity. The

11

trial judge heard the detective's testimony and found it credible, and we owe deference to that determination.

We next turn to defendant's challenge of the search warrant, for which the scope of appellate review is also limited. State v. Chippero, 201 N.J. 14, 32 (2009). "[R]eviewing courts 'should pay substantial deference' to judicial findings of probable cause in search warrant applications." State v. Andrews, 243 N.J. 447, 464 (2020) (quoting State v. Kasabucki, 52 N.J. 110, 117 (1968)). "[W]hen the adequacy of the facts offered to show probable cause is challenged . . . and their adequacy appears to be marginal, the doubt should ordinarily be resolved by sustaining the search." State v. Jones, 179 N.J. 377, 388-89 (2004) (quoting Kasabucki, 52 N.J. at 116).

When the detectives attempted to effectuate an investigatory stop, defendant ignored their orders and instead walked away; then, upon seeing police lights ran to the back of the residence. Gambino observed defendant running from a basement window area, in which they recovered a handgun. Contrary to defendant's recitation of the facts, the application for the search warrant was supported not only by the events leading up to the investigatory stop, but also defendant's flight from police and their discovery of the weapon.

Defendant maintains that because the handgun was discovered outside the vehicle, it could not have justified the search of the vehicle. This contention fails because the fact that the weapon was found "some distance" from the vehicle does not attenuate its connection to the vehicle. Gambino saw defendant run from the car to the back of the house, then run from the window area where the weapon was found. A reasonable inference is that defendant had the weapon on his person in the car and, knowing he was a certain person not to have a weapon, ran to the backyard to dispose of it when he saw the police lights. Thus, the court correctly determined the search warrant was supported by probable cause.

To the extent the motion judge and the parties addressed a warrantless search of the vehicle, we decline to consider that issue because the search of the vehicle was executed pursuant to a search warrant. We are satisfied that under the totality of the circumstances, the police had a reasonable and articulable suspicion to conduct an investigatory stop of defendant and established sufficient probable cause to justify the issuance of the search warrant.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2468-22